UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEROY SECHEREST, DAMION LEVY,
TYQWON WALDEN, MARCUS YOUNG,
ARKICA STEWART, COMECHIA RANDLE,
MINNIE STEWART, QUARNEESHIA WALDEN,
DORNELL MALONE, JOHN ADAMS, DWAYNE
STEWART, YOLANDA WALLACE, CRYSTAL
WALLACE, LEON LEWIS, FREDERICK
JOHNSON, LEONTAY ELLINGTON AND
JAMES BANKHEAD, JR.                                      PLAINTIFFS

VS.                           CIVIL ACTION NO. 3:24-CV-34-TSL-MTP

CITY OF LEXINGTON, ROBIN MCRORY,
CHARLES HENDERSON, AARON AGEE,
SAM DOBBINS, CORDARIUS EPPS,
CHRIS BURRELL, JUSTIN NEWELL,
LARON SIMPSON AND SCOTT WALTERS                         DEFENDANTS


MEMORANDUM OPINION AND ORDER

    Seventeen plaintiffs, all residents or former residents of

the City of Lexington, Mississippi, have filed this lawsuit

against the City of Lexington, Lexington Mayor Robin McCrory,

Police Chief Charles Henderson, former Lexington Police Chief Sam

Dobbins, and Lexington police officers Aaron Agee, Cordarius Epps,

Chris Burrell, Justin Newell, Laron Simpson and Scott Walters,

alleging claims under 42 U.S.C. § 1983 for alleged violation of

their rights, primarily under the Fourth Amendment (for illegal

seizure) and the Fourteenth Amendment (for excessive force).  The

case is presently before the court on the separate motions of

1

defendant Aaron Agee for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and for summary judgment under Rule 56 as to each of the eleven plaintiffs who have asserted causes of action against him.[1]  These plaintiffs have responded in opposition to Agee's motions,[2] and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion for summary judgment should be granted in part and denied in part, as set forth herein.[3]

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1]    The other defendants have purported to join in Agee's motion, but their purported joinder is not coterminous with Agee's motion; instead, in it, defendants, or some of them, raise new arguments or bases for dismissal.  Except as to claims against other defendants that are clearly foreclosed based on arguments and evidence presented by Agee in this motion, the court will disregard the joinder.

There is also pending a separate motion by defendant Robin McCory which will be addressed in a separate opinion to be entered shortly.

[2]    Plaintiffs do not oppose dismissal of their official capacity claims against Agee.

[3]    The motion for judgment on the pleadings will be denied on the claims for which summary judgment is denied and will be denied as moot on the claims as to which summary judgment is granted.

judgment as a matter of law." Fed. R. Civ. P. 56(a). Typically, on a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

That said, a government official's good faith assertion of a qualified immunity defense alters the usual summary judgment burden of proof. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).[4] Once the official asserts qualified immunity, the plaintiff has the burden to show there is a genuine and material dispute as to whether qualified immunity applies. Castorena v. Zamora, 684 Fed. Appx. 360, 363 (5th Cir. 2017) (citations omitted).

_____

[4]    The court includes the summary judgment standard that applies when qualified immunity is asserted because as to the claims of some (but not all) plaintiffs, Agee seeks summary judgment on the basis of qualified immunity.

When evaluating whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008). In so doing, the court must view all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor, even on a summary judgment motion based on qualified immunity. See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.").

With these standards in mind, the court addresses Agee's motion as to each plaintiff separately.

**Larry Secherest**

Larry Secherest has asserted causes of action for false arrest, excessive force, illegal search, and violation of his First Amendment rights.[5] In addition, he, like all the

---

5    These claims are based on the following: Secherest alleges that after he witnessed Lexington police officers assaulting a mentally ill woman, he complained to Police Chief Charles Henderson, who "had no interest" in what he had to say. Secherest thus created a Facebook post, seeking video evidence of the attack to send to authorities. Four days later, officers allegedly lured Secherest to a basketball court (by arresting his son); and when Secherest arrived, Henderson, referencing the incident with the young woman, told Secherest to "[s]tay out of police business."

plaintiffs, has asserted a claim for alleged violation of his rights under the Equal Protection Clause.  As to Secherest, Agee has moved for dismissal of only the equal protection claim.  In response to the motion, plaintiffs have advised that they are withdrawing this claim.  Thus, Secherest's equal protection claim, as well as the equal protection claims of all plaintiffs against all defendants, will be dismissed.

**Leon Lewis**

The complaint alleges that sixty-five year old Leon Lewis mistakenly put the wrong tag on his car.  He was stopped by defendant Cordarius Epps, who arrested and handcuffed him. According to the complaint, Epps and Agee then threw him in the police car, smashing his foot, and left him in the car for thirty to forty-five minutes in the sweltering heat, with the car's heater running.  Lewis alleges that his legs swelled and cramped, and he had chest pains and headaches.  He claims he was

---

Then, Agee allegedly arrested Secherest without probable cause for failing to comply with Agee's directive to "get yo hands out yo pockets" and then "body-slammed [Secherest] to the ground," jumped on his back and put him in a chokehold so he could not breathe, after which the officers all began poking Secherest with their tasers.  They searched his car, found THC edibles and charged Secherest with possession of a controlled substance and disorderly conduct.  He was taken to the police station, where more drug charges were added.  Agee has not moved for dismissal or summary judgment on Secherest's false arrest and excessive force claims based on these alleged events.

transported to the hospital by ambulance, where he was found to be dehydrated and at risk of a heart attack and/or stroke.

Agee has moved for summary judgment as to Lewis's claims based on bodycam video, which, as Agee correctly contends, completely belies Lewis's account of the stop. The video shows that Lewis was not thrown into the police car and that he was in the police cruiser for only a few minutes – five or fewer minutes -- before being transported to the police station. Further, because Lewis informed officers during the stop that he was a heart patient and insisted during transport that he was having a heart attack, a paramedic unit was called and was at the police station when Lewis arrived, just minutes after leaving the scene of the stop. The evidence also shows that, in fact, the wrong tag was on the vehicle, and that despite Lewis's insistence that the correct tag was in his car, officers thoroughly searched the vehicle and found no other tag.

Where video evidence is available, the court is "required to 'view the facts in the light depicted by the videotape.'" Bailey v. Ramos, 125 F.4th 667, 675 (5th Cir. 2025) (quoting Boyd v. McNamara, 74 F.4th 662, 665 (5th Cir. 2023)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

6

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court thus "'assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.'" <u>Bailey</u>, 125 F.4th at 675 (quoting <u>Carnaby v. City of Houston</u>, 636 F.3d 183, 187 (5th Cir. 2011)).

Lewis's claims will be dismissed, as the video evidence clearly establishes there was probable cause for his arrest and completely contradicts his claim of excessive force.

**Arkica Stewart:**

According to the complaint, Arkica Stewart was stopped on Thursday, January 4, 2024, by defendant Laron Simpson for running a stop sign, which Stewart denied having done. As Simpson returned to his vehicle with her license and registration, Stewart noticed Agee and an Officer Boyd arrive in their patrol cars. Simpson, she alleges, returned to her vehicle "and told her to step out of the car because he had a warrant for her arrest." As Agee arrived at Stewart's vehicle, Officer Simpson was in the process of Mirandizing Stewart and placing her in handcuffs. Stewart alleges that Agee then "told her he was charging her with

lying to an officer because he believed she was lying about not running the stop sign."

Simpson transported Stewart to the police station for booking. When Agree arrived a few minutes later, according to the complaint, he changed the charge against Stewart from lying to an officer to hindering prosecution. And, although a police department employee found a warrant that reflected a $5,000 bond, Agee told Stewart she did not have a bond; he further allegedly told her he had found old fines against her totaling $524 which she would have to pay the following day, after spending a night in jail; and he said she could not bond out until she went before a judge for a bond hearing the following Monday morning. The complaint recites, however, that Stewart was "released the same night after LPD dropped the other charges and forced her to pay for an old fine."

While Stewart has made various factual allegations relating to Agee's threatening to hold her in jail overnight or over the weekend, the sole claim she has asserted against Agee in the complaint is for false arrest. Specifically, she charges that "Agee lacked probable cause for the arrest" because "[i]n Mississippi, it is only a crime to lie to an officer [about a

person's] identity, their social security number, or the identity of another," none of which applied in her situation.

As clearly demonstrated by video footage from Agee's bodycam, and contrary to Stewart's allegations, Agee did not arrest or threaten to arrest her for any offense. Rather, Officer Simpson arrested Stewart based on an outstanding warrant.[6] In fact, Simpson had already informed her he was arresting her pursuant to a warrant and was placing her in handcuffs when Agee arrived on the scene.[7] The video evidence also contradicts Stewart's claim that Agee told her he was charging her with lying to an officer or that he said anything about charging her with any offense. Stewart, on the other hand, can be seen and heard on the video repeatedly complaining about Agee's having had a warrant issued against her.

_____

[6] Agee has argued that Stewart's false arrest claim is <u>Heck</u> barred because Stewart paid a fine to resolve the charge of running the stop sign. However, he has offered no evidence to show that Stewart was arrested based on the traffic offense. For her part, Stewart does not allege that she was arrested for running the stop sign; rather she alleges that Simpson "returned to her vehicle and told her to step out of the car because he had a warrant for her arrest." She argues that, in fact, if all she had been charged with was running the stop sign, she would not have been arrested but would have been given a ticket (and she was, in fact, ticketed for the traffic offense) and allowed to leave.

[7] Stewart has herself alleged that "Defendant Simpson Mirandized and handcuffed her. Defendant Agee and Officer Boyd then approached her vehicle...."

Notably, too, Stewart has not denied that at the time of her arrest by Officer Simpson, there was an outstanding warrant for her arrest. The record evidence, in fact, confirms that a municipal judge had issued a warrant for Stewart's arrest on June 24, 2023, for "H[i]ndering Prosecution (Felony)." Stewart has not alleged or argued that the warrant was not valid, and she has not alleged that Simpson lacked probable cause to arrest her based on the warrant.[8] Accordingly, her claim will be dismissed.

_____

[8] Stewart argues in her sur-reply that Agee, by failing to argue in his opening memorandum that her false arrest claim fails because she was arrested pursuant to a facially-valid warrant, has waived that argument. When an argument is raised for the first time in a reply brief, the court may disregard it, or it may give the nonmovant an opportunity to file a sur-reply. See S. Lavon Evans, Jr. Drilling Venture, LLC v. Laredo Energy Holdings, LLC, Civil Action No. 2:11-CV-12-KS-MTP, 2011 WL 1104150, at *1 (S.D. Miss. Mar. 23, 2011) ("While the Court typically disregards arguments raised for the first time in a rebuttal, allowing [the nonmovant] to file a sur-reply would serve the same substantial purpose…."). Here, plaintiffs requested and were granted leave to file, and they did file a 45-page sur-reply to address new arguments asserted in Agee's reply memorandum. Their waiver argument is therefore rejected.

But, regardless of whether Agee had argued that the warrant validated the arrest, what is dispositive here is the fact that Stewart has not alleged that officers lacked probable cause to arrest her pursuant to the outstanding warrant. Therefore, her claims against both Agee and Simpson will be dismissed, as will any putative claim against Boyd, whose only involvement, apparently, was having been present when the arrest occurred. See Minton v. Nat'l Ass'n of Sec. Dealers, Inc., 226 F. Supp. 2d 845, 882 (E.D. Tex. 2002) (district court may enter summary judgment sua sponte if losing party had notice of the possibility and a "full and fair opportunity to ventilate the issues.").

**Leontay Ellington**

Leontay Ellintgon alleges that on June 22, 2023, Agee pulled him over when he had not committed any offense, then arrested him for "old fines."  He was transported to the police station, where a clerk told him he had an old fine of $79.  Ellington alleges that Agee then walked up and said that Henderson would not allow Ellington to be released until Agee gave him more tickets; and so Agee gave him three tickets for traffic violations he had not committed.  Ellington states he paid the fines "to resolve the false charges."

Agee contends that Ellington's false arrest claim is barred by Heck v. Humphrey.  Under Heck, to recover for an unconstitutional arrest that has resulted in a conviction, a § 1983 plaintiff must show that the conviction underlying the unconstitutional arrest has been reversed, expunged, declared invalid, or called into question by a federal writ of habeas corpus.  Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994); Lewis v. City of Waxahachie, 465 F. App'x 383, 385 (5th Cir. 2012) (holding that a § 1983 claim for wrongful arrest does not accrue until the underlying conviction has been overturned, expunged, or otherwise invalidated).

11

Agee argues that <u>Heck</u> applies to bar Ellington's claim. He reasons that in light of Ellington's allegation that he paid a fine "to resolve the false charges," it follows that he stands convicted of the charge for which he paid the fine because payment of a fine is tantamount to a plea of nolo contendere, see <u>Owens v. Kelly</u>, 191 So. 3d 738, 744 (Miss. Ct. App. 2015) (stating that "payment of a typical traffic fine . . . may be more akin to a plea of nolo contendere"); and <u>Claunch v. Williams</u>, 508 F. App'x 358, 359 n.2 (5th Cir. 2013) ("a plea of nolo contendere.... is enough ... to trigger <u>Heck</u>"). In the court's opinion, Agee's position is not well founded.

Mississippi Code Annotated § 99-19-3, which defines what qualifies as a conviction under Mississippi law, states as follows:

> (1) Except as provided in subsection (2) of this section, a person indicted for a criminal offense shall not be convicted thereof, unless by confession of his guilt in open court or by admitting the truth of the charge against him by his plea, or by the verdict of a jury accepted and recorded in court. A person charged with an offense shall not be punished therefor unless legally convicted thereof in a court having jurisdiction of the cause and of the person.

> (2) In all cases in the circuit, county, justice and municipal courts involving a traffic misdemeanor violation ... where a person has been issued a ticket or has been formally charged by affidavit, indictment or information and desires to waive a trial and not appear in court and defend the charge, the amount of the fine,

in the discretion of the court, may be paid in advance
to the clerk of the court.  When the fine is paid in
advance, the person cited must be notified by language
plainly printed on a waiver form or the ticket of the
person's right to a trial and the consequences of the
voluntary advance payment of the fine.  In cases where
formal charges have been made and the person charged has
been notified to appear in court at a certain date and
time, the clerk of the court is authorized to accept a
cash appearance bond, not to exceed the amount of the
fine, conditioned upon the appearance of the person in
court at the cited date and time.  In the event of
default, the cash appearance bond may be forfeited in
payment of any judgment in the case in an amount not to
exceed the amount of the bond; and in such cases of cash
appearance bond forfeiture, it shall be final without
necessity of judgment nisi and issuance of the writ of
scire facias.  In the event a person so cited or charged
pays a fine in advance after notice of the person's
rights, this shall constitute a waiver of formal charge,
arraignment and trial; and in such cases and in cases of
default on cash appearance bond, such action shall be a
plea of nolo contendere by such person and the court,
upon the advance payment of fine or the default on cash
appearance bond, may convict the person of the offense
stated in the ticket or formal charges without further
appearance by the person.  Traffic convictions shall be
reported to the Commissioner of Public Safety as
required by law....  It shall not be necessary to enter
traffic misdemeanor cases in the municipal court docket.
(3) For the purposes of this section:
   (a) The term "fine" means, in addition to the
pecuniary punishment, all fees, costs, assessments and
other charges required by law to be imposed in such
cases.
   (b) The term "traffic misdemeanor" means a violation
of traffic or motor vehicle laws that do not require
mandatory imprisonment upon conviction but shall not
include repeat offenders where a sentence of
imprisonment is likely and shall not include charges
under the Mississippi Implied Consent Law....

Miss. Code Ann. § 99-19-3.

In support of his motion, Agee has offered proof that
Ellington entered into a payment plan for $786 in fines relating
to the June 2023 charges.[9]  He has presented no evidence, however,
that Ellington was "notified by language plainly printed on a
waiver form or the ticket of [Ellington's] right to a trial and
the consequences of [his alleged] the voluntary advance payment of
the fine."  He has not, therefore, demonstrated that Ellington was
convicted of any of the allegedly false charges for which was
arrested.  Accordingly, Agee's motion as to Ellington will be
denied.

**John Adams**

John Adams owns a bar and grill in Lexington.  He alleges
that in June 2023, he, along with his brother and cousins, were
cleaning and closing the bar around 11:50 p.m., before the
midnight curfew, when Agee and another officer entered the bar and
ordered Adams and the others to leave.  Adam protested that he had
a right to be there, but he agreed to leave to defuse the
situation.  He asked the officers to step outside so he could lock
up, but they refused and arrested Adams for occupying a business

_____

9    Agee has offered forty-three pages of "court papers" relating
to Ellington.  Only two of those pages—the payment plan for the
fines-relate to the June 2023 arrest.  The remainder relate to a
November 2022 incident in which Agee was not involved.

after hours.  He was transported to the police station, where, he alleges, "he paid a $100 fine and a $25 turnkey fee at the police station to be released."

Adams alleges a similar incident occurred on another occasion:  Agee and three other officers arrived at his business around midnight and told Adams to leave.  When Adams protested that he had a right to be at his business after hours, Agee arrested Adams for failure to comply.  According to the complaint, "[a]gain, Mr. Adams paid the fine to resolve the charge."

As with Ellington, Agee argues that Adams' allegation that he paid fines to resolve the charges against him conclusively establishes that Adams stands convicted of the offenses, and that Adams' false arrest claims are, therefore, barred by <u>Heck</u>.  His position is not well taken.

Again, under Section 99-19-3, a person "charged with an offense shall not be punished therefor unless legally convicted thereof in a court having jurisdiction of the cause and of the person."  The exception in subsection (2) for cases involving traffic misdemeanor violations has no relevance to Adams, whose charges did not involve traffic offenses.  In the court's opinion, under the terms of the statute, Adams' mere payment of a fine at the police station does not constitute a conviction.  And as Agee

15

has presented no evidence that Adams was "legally convicted" of any offense "in a court having jurisdiction," the court rejects Agee's contention that <u>Heck</u> bars Adams' false arrest claims.

**Marcus Young:**

Marcus Young alleges that in December 2023, Officers Walters and Agee approached him and a friend as they were sitting in the friend's car in a parking lot near a gas station. According to the complaint, Officer Walters located an empty beer can underneath the car, and accused Young of drinking the beer and discarding the can. Young denied the can was his, but Walters told him, "It's cold, so it's yours." Officer Agee told Walters to charge Young with an open container violation. Young was arrested and taken to the police station. The complaint alleges that once there, "Agee told him that he had to come up with $200 to get processed. An acquaintance brought $125 in cash to the station for Mr. Young to resolve his fine. LPD accepted the payment and finally released him."

Agee argues that Young's allegation that he paid $125 "to resolve his fine" is tantamount to an admission that he was convicted, and that his claim is barred by <u>Heck</u>. The court is not persuaded. First, the complaint alleges both that the payment was a processing fee required for Young to be released from custody

16

and that this amount was paid "to resolve his fine."  Agee has offered no proof to establish the actual purpose of the alleged $125 payment, and therefore, the court, construing the complaint in the light most favorable to Young, accepts that the payment was a processing fee and not a fine; thus, the allegations of the complaint do not establish that Young paid any fine for the open container charge.

Even if the court were to assume that the $125 Young paid was a fine, however, the fact that he paid a fine, without more, would not establish that he was convicted of the offense.  Rather, as this was not a misdemeanor traffic offense, then under § 99-19-3, to prove Young was convicted, Agee would have to show that Young was "legally convicted in a court having jurisdiction."  Agee has offered no such proof and therefore, he has failed to establish that Young's claim is barred by <u>Heck</u>.

Agee argues that even if Young's claim is not <u>Heck</u> barred, his false arrest claim fails because there was probable cause to charge him with an open container violation, or at least arguable cause, such that he has qualified immunity as to this claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have

known.'" Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815,

172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S.

800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> Once a defendant asserts qualified immunity, the
> plaintiff bears the burden of negating it by showing
> that (1) the official violated a statutory or
> constitutional right and (2) the right was "'clearly
> established' at the time of the challenged conduct."
> "Although the plaintiff need not identify 'a case
> *directly* on point' in order to" show the law was clearly
> established, "he or she must point to 'authority at a
> sufficiently high level of specificity to put a
> reasonable official on notice that his conduct is
> definitively unlawful.'"

Bailey v. Ramos, 125 F.4th 667, 674 (5th Cir. 2025) (footnotes and

citations omitted).

"'It is well established that under the Fourth Amendment a

warrantless arrest must be based on probable cause.'" Bailey v.

Iles, 87 F.4th 275, 285 (5th Cir. 2023) (quoting United States v.

Castro, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). "Probable

cause exists when all of the facts known by a police officer 'are

sufficient for a reasonable person to conclude that the suspect

had committed, or was in the process of committing, an offense.'"

Sam v. Richard, 887 F.3d 710, 715 (5th Cir. 2018) (quoting State

v. Kleinert, 855 F.3d 305, 316 (5th Cir. 2017)). A probable cause

determination is objective and involves examining "the reasonable

18

conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004).

The qualified immunity doctrine recognizes that "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Mendenhall v. Riser, 213 F.3d 226 (5th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (other quotation marks and citations omitted)). To overcome Agee's qualified immunity, Young must show "that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest[]." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 206–07 (5th Cir. 2009).

Lexington's open container ordinance makes it illegal for "any person to consume wine or beer or any other alcoholic beverages on or within view of a public street and any other public place, at any time, in the City of Lexington." It is undisputed that Young was in a public place. Further, bodycam video shows that as Young was seated in the passenger seat of the vehicle, there was an unopened can of Busch beer inside the vehicle, next to Young's left leg, and Officer Scott Walters found an open can of Busch beer on the ground just under the passenger

19

door.[10]  Contrary to Young's allegation, the can was not empty and was dented but not crushed.  There is a dispute between Young and the officers as to whether Young admitted to officers that he had been drinking, a dispute which cannot be resolved by reference to the bodycam video.  But the fact that an open can of Busch beer was found just under the passenger side of the vehicle, where Young was sitting, coupled with the fact that Young had an unopened can of Busch beer inside the vehicle, gave the officers probable cause to believe the open container belonged to Young.  The officers certainly could reasonably, even if mistakenly, have concluded that Young had been drinking the beer and discarded the can.  There was no constitutional violation, and alternatively,

---

10    The court notes that in response to Agee's motion, plaintiffs have submitted a declaration, purportedly e-signed by Young, which describes his interaction with the officers.

Agee objects that the "eSignature Details" report accompanying the declaration show that the document was actually e-signed by "shirley stewart," an individual associated with the Julian Freedom nonprofit organization founded by plaintiffs' counsel Jill Collen Jefferson.  In plaintiffs' sur-reply, counsel explains because Young had no e-mail address, he lacked the ability to create an account to e-sign the declaration, and therefore, Ms. Stewart, an organizer with Julian Freedom, went to Young's home with her computer and allowed him to e-sign the document using her account and e-mail address.

The court may properly consider the declaration, as Agee has not objected that the declaration "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Even considering the declaration, however, it is clear from the evidence – and specifically the bodycam video – that Agee is entitled to summary judgment on Young's claim.

Agee is entitled to qualified immunity on Young's false arrest claim.[11]

**Dwayne Stewart:**

Dwayne Stewart was arrested on December 1, 2023 for an open container violation after walking out of a bar with an open beer. He alleges that he tried to reenter the bar but officers, including Agee, grabbed him and threw him against the hood of a vehicle. Two officers held him down and tased him three times even though he was subdued and not resisting. He was held in jail overnight and had to pay $267 to be released.

The sole basis Agee has argued in support of his summary judgment motion as to Stewart is that his claims are barred by Heck, as Stewart was convicted in municipal court of the charged open container and failure-to-comply offenses. In response to the motion, however, plaintiffs have adduced uncontroverted evidence that these charges against Stewart were ultimately dismissed following Stewart's appeal to the Holmes County Circuit Court. Accordingly, Agee's motion as to Stewart will be denied.

---

11    The court also concludes, sua sponte, that summary judgment is proper in favor of Walters as well on this claim.

**Yolanda Wallace**

Yolanda Wallace has asserted a cause of action against Agee for false arrest. In the complaint, Wallace alleges that on June 9, 2023, after receiving a call from her brother saying that LPD officers were beating and tasing her son, she drove to Sweeney Lane, where she turned and saw defendant Henderson standing outside his patrol car. His car was blocking her street, so she backed up, turned around and continued driving up the street, looking for her son. Within five minutes, "Henderson had pulled around and parked his patrol car in front of [her] vehicle, blocking her."

While driving, Wallace telephoned the mayor's office to inform her of what was happening to her son but was told the mayor had left for the day. Wallace was on the phone with the clerk, Idella Anderson, "when Defendants Henderson and Agee approached her driver's side window and told her to step out of the car." She states that "[w]hen she stepped out of her vehicle, Defendant Agee placed her under arrest," ostensibly for disorderly conduct. Wallace has sued Agee for false arrest, contending there was no probable cause for her arrest.

In his motion, Agee contends there was probable cause to charge Wallace with reckless or careless driving and/or failure to

comply, or at least there was arguable probable cause, and that, therefore, he is entitled to qualified immunity.  Pointing to his arrest report, Agee claims that officers were warranted in stopping Wallace's vehicle for reckless driving because she was driving erratically.  And he argues that bodycam video of the ensuing arrest clearly shows there was probable cause to arrest Wallace for disorderly conduct because she refused to step out of her vehicle despite being ordered to do so several times, both by Agee and Henderson.

In her response to the motion, Wallace does not deny that she refused to exit her vehicle when directed to do so.[12]  She argues, though, that officers did not have probable cause, or even arguable probable cause, to believe she had committed any offense that would have justified them in stopping her in the first place, and she contends that since the stop was illegal, then the order to exit the vehicle was not a lawful order that would have supported her arrest for disorderly conduct.

It is clear that the facts relating to the stop of Wallace's vehicle are in dispute; and viewing the facts in the light most

_____

12    Bodycam video does confirm that Wallace was repeatedly ordered to exit the vehicle and that she refused to do so. Wallace claims she was afraid to do so, given what she believed was happening with her son.

favorable to Wallace, the court cannot conclude there was probable cause for the stop.  Agee's arrest report, which is the only evidence he has offered in support of his motion, states that Wallace "drove her vehicle erratically [sic] in front of Chief Henderson and other officers" and was "operating her cell phone, which is illegal."[13]  Agee's report, however, does not indicate that he observed Wallace driving erratically, or indicate any basis for his assertion that she was driving erratically.  For her part, Wallace denies that she was driving erratically or could reasonably have been perceived as driving erratically.  In her declaration submitted in response to Agee's motion, Wallace states that as she was driving around looking for her son, she was about to make a left-hand turn from a stopped position at a stop sign when Henderson suddenly pulled in front of her and stopped; she swerved out of her lane, but only to avoid hitting him.  Accepting Wallace's version of events, there was no reasonable basis for

---

[13]    The following comes directly from Agee's report:
I ... was radioed to Marathon parking lot to assist Officer Newell and Officer Simpson with trying to detain [Wallace's] son Mr. Terrance Gypson for a arrest warrant for Petty Larceny.  Ms. Wallace drove her vehicle erratically in front of Chief Henderson and other officers.  Then drove down where we were chasing Mr. Gypson while operating her cell phone which is illegal.

concluding that Wallace had engaged in reckless driving, as asserted by Agee.

As for the alleged cell phone offense, it is not illegal in Mississippi to talk on a cell phone while operating a motor vehicle; it is only illegal to text while driving using a handheld device.[14]  See Miss. Code Ann. § 63-33-1(2) ("An operator of a moving motor vehicle is prohibited from writing, sending, or reading a text message and from accessing, reading or posting to a social networking site using a hand-held mobile telephone while driving said motor vehicle.").  Wallace denies she was texting while driving, and Agee has offered no evidence to suggest that he or any of the officers had, or arguably had any basis to believe otherwise.

In his reply brief, Agee offers a third reason for stopping Wallace's vehicle, namely, that Wallace, by her own admission in her response declaration, "turned [her] vehicle around and went the other direction" upon encountering a police roadblock at Sweeney Lane.  The court need not determine whether her turning around at the roadblock, without more, would have provided

---

14    Wallace maintains that officers could not have observed her talking on her cell phone in any event because, while she was talking on her with Idella Anderson in the mayor's office, she was talking "hands free"; her phone was in the cupholder.

25

probable cause for a stop because there is no evidence to suggest that any officer, including Agee, had even seen Wallace's vehicle turn around.[15]  According to her declaration, Wallace was not stopped immediately after turning around; rather, she continued to drive around for another five minutes before she was stopped, and then, she was stopped only after swerving to avoid hitting Henderson's vehicle.  Further, Agee's arrest report does not mention this supposed infraction, nor did he mention it in his opening brief.  Rather, this assertion came only after Wallace submitted her declaration, characterizing Henderson's stopped vehicle on Sweeney Lane as a roadblock, suggesting that this is when he first became aware that she had turned around "to avoid the roadblock."  In the absence of evidence that officers were aware of this alleged offense at the time of the stop, the court cannot conclude that it provided probable cause for the stop.  See Freeman v. Gore, 483 F.3d 404, 414 (5th Cir. 2007) ("Although the probable cause inquiry is an objective one, it must nevertheless

---

[15]   In her sur-reply, Wallace submits that while a motorist's turning to avoid a roadblock could be a factor, among others, that could potentially justify a stop, she contends that merely turning to avoid a roadblock, without more, is not an offense and would justify a stop.  The Mississippi Supreme Court has held, though, that "'[w]hen a motorist evades a police roadblock . . . police may stop them and check the validity of their license tag. . . .'" Turner v. State, 319 So. 3d 1066, 1079–80 (Miss. 2021) quoting Boches v. State, 506 So. 2d 254, 264 (Miss. 1987)).

be conducted in light of the actual facts known to the officer at the time of the arrest."); <u>United States v. Vickers</u>, 540 F.3d 356, 361 (5th Cir. 2008) ("Whether an officer has reasonable suspicion to stop is answered from the facts known to the officer at the time.").

"Under Mississippi law, a person is guilty of disorderly conduct if he fails or refuses to promptly comply with *a lawful order* 'with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace.'" <u>United States v. Orey</u>, No. 23-60142, 2023 WL 7096902, at *1 (5th Cir. Oct. 26, 2023) (emphasis added) (quoting Miss. Code Ann. § 97-35-7(1)).  The law is clearly established that a police officer may lawfully order the driver of a vehicle to exit the vehicle following a lawful traffic stop.  <u>See</u> <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 111, n.6, 98 S. Ct. 330, 333, n.6, 54 L. Ed. 2d 331 (1977) (holding that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); <u>see also</u> <u>Maryland v. Wilson</u>, 519 U.S. 408, 413–15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) (extending <u>Mimms</u> holding to passengers).  If the stop of

the vehicle was lawful, then the officers' orders to exit the vehicle would have been lawful, and Wallace's undisputed failure to then exit the vehicle would have given Agee probable cause to arrest her for disorderly conduct.  The court has concluded, however, that the material facts as to whether the stop was justified are disputed, precluding summary judgment.

If the stop was not lawful, the question becomes whether the officers' orders to exit the vehicle were lawful, or, for qualified immunity purposes, whether it was clearly established that the orders to exit the vehicle, and Wallace's arrest for failure to comply with those orders, violated her constitutional rights.  Wallace is not required to identify a case "directly on point" to satisfy her burden to show the defendant's conduct violated a constitutional right that was "clearly established," but she is required to provide pertinent authority holding that "sufficiently similar conduct violates the Constitution."  Bakutis v. Dean, No. 24-10271, 2025 WL 603694, at *4 (5th Cir. Feb. 25, 2025) ("T]o prevail, [she] must meet [her] burden to demonstrate that [the] 'right was clearly established ... in light of the specific context of the case.'") (quoting Thompson v. Mercer, 762 F.3d 433, 437 (5th Cir. 2014) (internal quotation marks omitted)).  In the court's opinion, she has satisfied her burden.

28

In <u>Johnson v. Thibodaux City</u>, 887 F.3d 726 (5th Cir. 2018), cited by Wallace, Jackalene Johnson and others were riding in a truck driven by Latisha Robertson.  <u>Id.</u> at 729.  An officer stopped the truck because he recognized Robertson and knew she had an outstanding warrant.  <u>Id.</u>  He asked her to exit, placed her in handcuffs and called for transport, since he could not transport Robertson in his K-9 vehicle.  <u>Id.</u>  After other officers arrived and Robertson was placed in the back of a patrol car, officers approached the truck and asked the passengers for identification. <u>Id</u>.  When Johnson refused to identify herself, the officers arrested her for violating a Louisiana statue requiring an "arrested or detained party" to provide identification when the officer is making "a *lawful* arrest" or a "*lawful* detention."  <u>Id.</u> at 730, 733 (citing LA. STAT. ANN. § 14:108 (2016) (emphasis added).

Johnson sued for false arrest under § 1983 and appealed following a jury verdict for the defendant officers.  The Fifth Circuit reversed, finding that the continued detention of the truck's occupants after Robertson's arrest was unlawful, and that the officers, consistent with the Fourth Amendment, could not lawfully require the occupants to identify themselves.  The court wrote:

29

> Under the Fourth Amendment, police officers may not require identification absent an otherwise lawful detention or arrest based on reasonable suspicion or probable cause. See Brown v. Texas, 443 U.S. 47, 52-53, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). While officers are free to demand identification in the circumstances of a lawful stop or arrest, they "may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 188-89, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004).
>
> The cases cited by the city are not to the contrary. In Pennsylvania v. Mimms, 434 U.S. 106, 109-11, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), the Court held that police may require the driver of a vehicle that was lawfully stopped to exit the vehicle during the course of the stop. And in Maryland v. Wilson, 519 U.S. 408, 413-15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), the Court extended the rule of Mimms to passengers. But critically, in both cases the Court was careful to articulate that both Mimms and Wilson involved otherwise lawful stops. See Mimms, 434 U.S. at 109, 111 n.6, 98 S.C t. 330; Wilson, 519 U.S. at 410-11, 117 S. Ct. 882. Thus, under both Louisiana law and the Constitution, Johnson was required to provide identification only if she was otherwise lawfully stopped. The officers would have no probable cause to arrest if the request for identification came during an illegal seizure.

Id. at 733. The court ruled that "[b]ecause Johnson was not lawfully stopped, she committed no crime by refusing" to identify herself. Id. at 735.

Although Johnson is not directly on point as it involved refusal to provide identification during an illegal detention whereas the present case involves a refusal to exit the vehicle during what the court accepts for present purposes was an illegal

30

stop/detention, the context is sufficiently similar and the underlying principle is the same. Therefore, on the present record, the court concludes that Agee's motion for summary judgment should be denied.

**Quarneeshia Walden**

Quarneeshia Walden has asserted false arrest claims against Agee relating to two separate incidents.

In November or December of 2022, Agee and defendant Justin Newell pulled her over, ostensibly for not wearing a seatbelt. When she questioned how the officers could have known whether she was wearing a seatbelt when they were driving in the opposite direction, Agee replied that he that did not see her seatbelt on. He took her driver's license and asked for her proof of insurance, which was in her other vehicle. Agee instructed Walden to drive to the police station, and he followed behind her. At the station, a clerk told her she would have to pay $100 in cash to avoid jail time. Agee, who had begun flirting with Walden, told Walden he would only charge her with having no proof of insurance; he would not charge her for the seatbelt violation. Walden alleges she "paid Defendant Agee $100, which resolved her charges" and that she was never given a court date.

31

Agee argues that Walden's claim relating to this incident is Heck barred.  As with Ellington, however, Agee has offered no proof that Walden was "notified by language plainly printed on a waiver form or the ticket of [Warden's] right to a trial and the consequences of [her alleged] the voluntary advance payment of the fine."  Agee's motion will be denied as to Walden's false arrest claim relating to this incident.

Walden further alleges that in August 2023, she was falsely arrested for domestic violence.  Bodycam video presented by Agee clearly demonstrates he had probable cause to arrest both Walden and her boyfriend on charges of domestic violence.  On the date of the incident in question, the mother of Walden's boyfriend called the police about a fight between Walden and her boyfriend.

The bodycam video shows that when Agee arrived at the home, the boyfriend, who was in the front yard, reported that Walden had stabbed him in a dispute over gas money.  Agee knocked on the door of the home and identified himself as the police.  When Walden opened the door, Agee told her he needed to step inside.  She stepped back and he entered the home, with the boyfriend behind him.[16]  He then spoke with both parties in an effort to determine

_____

16   The complaint describes Agee as having "barged into" the home.  The bodycam video belies this characterization.  Walden did not invite him, but she did step back and allowed him to enter.

32

what had happened.  Walden claimed her boyfriend had choked her, and the boyfriend claimed Walden had stabbed him and at Agee's request, showed Agee his wound.  Despite Walden's denial that she had stabbed her boyfriend, Agee plainly had probable cause to arrest both individuals for domestic violence.

**James Bankhead**

According to the complaint, on May 8, 2023, James Bankhead, Jr. was playing basketball at the Mulberry Street courts when defendants Epps, Henderson and Young arrived and told everyone to leave due to a curfew.  Bankhead alleges that as he was walking toward his car, a woman in a vehicle drove by slowly, pointed a firearm toward Bankhead and said she was going to shoot him. Bankhead, upset, cursed in response to the threat.  Agee, who overheard him, told Bankhead he could not use profanity in front of an officer and arrested him.  At Henderson's direction, Bankhead was transported to the county jail, where he was charged with disorderly conduct, public profanity and failure to comply. Bankhead alleges that his parents, who met him at the jail, paid $200 and a $35 processing fee to secure his release, and they ultimately paid a total of $600 for all the charges, including a $225 fine for the public profanity charge.

Bankhead has sued, alleging that the arrest for using profanity violated his rights under the First and Fourth Amendments, which guarantee the right not to be arrested for protected speech without probable cause.  In fact, it is well established that the freedom to speak without being arrested on account of one's speech includes the right to use profanity.  Cohen v. California, 403 U.S. 15, 18, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971).  Agee has argued, however, that because Bankhead was convicted of public profanity and his conviction has not been overturned, expunged or held invalid, then his claims are barred by Heck.  In support, Agee has presented what purports to be a Lexington municipal court document showing that Bankhead was convicted of public profanity but found not guilty of the failure to comply/disorderly conduct charge.  Bankhead has presented no evidence to controvert this proof of his conviction or to show that his conviction has been overturned, expunged or set aside.

The record does show that Bankhead was found not guilty of the disorderly conduct charge.  However, the existence of probable cause to arrest is not offense specific; thus, if there was probable cause for any of the charges made, then the arrest was supported by probable cause, and the claim for false arrest fails.

Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995).  "Therefore, to have a valid claim, [Bankhead] must show there was no probable cause for the arrest, i.e., show no probable cause as to any of the underlying charges at the time of arrest, which he cannot do unless his [public profanity] conviction is overturned, expunged, or otherwise invalidated."  Regalado v. City of Edinburg, Civ. No. 7:22-cv-228, 2023 WL 2394299, at *6 (S.D. Tex. Feb 21, 2023).  Accordingly, the summary judgment motion as to Bankhead's claims will be granted.

**Minnie Stewart**

Minnie Stewart alleges that on July 19, 2023, she went to the Holmes County jail to check on her nephew who had been arrested for driving a four-wheeler within city limits.  According to her allegations, Agee appeared and told her she "'was hindering the course of justice' by asking the front desk staff about her nephew's arrest."  He then arrested her for hindering prosecution "but refused to give her any information about whose prosecution she had hindered"; and, "when she continued to question [him] about her arrest, he told her that he did not have to tell her why he was arresting her and that she would have to have an attorney call and request any available information."  Stewart further alleges that after several hours waiting in a cell, another

35

officer told her that to be released, she would have to pay a $500 bond. She states that she paid the bond but was not given a receipt or any discharge papers. She states she never received a copy of any ticket for hindering prosecution, and she has heard nothing further relating to the charge.

Agee contends in his motion that under the independent-intermediary doctrine, he is insulated from liability on Stewart's claim against him for false arrest as she was arrested pursuant to a facially-valid warrant, issued by a municipal judge, for hindering Agee's investigation into a June 23, 2023 shooting involving Stewart's grandsons. See Trevino v. Iden, 79 F.4th 524, 531 (5th Cir. 2023) ("Under the independent-intermediary doctrine, 'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation ... insulating the initiating party.'") (quoting Wilson v. Stroman, 33 F.4th 202, 208 (5th Cir. 2022)).

In her response, Stewart does not deny that she was arrested pursuant to this warrant. Instead, she argues that the warrant was invalid because Agee's affidavit for the warrant was a "bare bones" affidavit that did not include sufficient facts to support a finding of probable cause. See United States v. Brown, 941 F.2d

36

1300, 1303 (5th Cir. 1991) ("Clearly, a 'bare bones' affidavit is insufficient to establish probable cause.  The affidavits must supply the magistrate with sufficient information to determine that probable cause exists.").  She further argues there was no probable cause in any event to arrest her for hindering prosecution relating to the shooting incident, as she did not provide false information to Agee, as he has claimed; instead, she merely failed to answer his questions about the incident, as was her right.[17]

Stewart's sole allegation in the complaint is that she was falsely arrested for hindering prosecution *because she inquired about her nephew's arrest*.  The evidence presented by Agee completely disproves this allegation.  His evidence not only shows that her arrest for hindering prosecution was unrelated to her nephew's arrest but also clearly and unmistakably shows that at the time of her arrest, Stewart was both repeatedly advised that she was being arrested pursuant to a warrant for hindering Agee's investigation into a June 23, 2023 shooting involving Stewart's

---

[17]    Stewart has offered no explanation for the difference between the factual allegations in the complaint and her declaration submitted in response to the motion, in which she abandons the factual allegations in the complaint and in which she does not deny that she was informed of the existence of a warrant for her arrest.

grandsons.  Stewart's assertion that she was arrested pursuant to an invalid warrant and that there was no probable cause for her arrest for hindering prosecution in connection with the shooting incident does not appear in her complaint.  As the bodycam video clearly shows, she was specifically informed at the time of her arrest that she was being arrested pursuant to a warrant relating to the shooting incident involving her grandsons.  Yet the complaint does not reference the warrant or so much as hint that her arrest was in any way connected to Agee's investigation of shooting incident.  These putative assertions were first made in Stewart's response to Agee's motion and are not properly before the court.  See De Franceschi v. BAC Home Loans Servicing, L.P., 477 F. App'x 200, 204 (5th Cir. 2012) (district court may properly "disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment").  As the facts she has alleged as the basis for her false arrest claim are disproved by the record evidence, Agee's motion for summary judgment on her false arrest claim, as alleged in the complaint, is granted.[18]

------

[18]   If Stewart's challenge to the warrant were properly before the court, the court would conclude that Agee has qualified immunity as to such claim.  In the warrant application challenged by Stewart, Agee stated that Stewart provided false information in response to his inquiries relating to the shooting incident.

**Conclusion**

Based on the foregoing, it is ordered as follows:

Plaintiff's official capacity claims against Agee are dismissed;

Agee's motion for summary judgment on Larry Secherest's equal protection claim is granted, as plaintiffs advise they are withdrawing their equal protection claim against all defendants;

Agee's motion for summary judgment is granted as to Leon Lewis's false arrest and excessive force claims, and his claims against all defendants will be dismissed for the reasons set forth herein;

Agee's motions to dismiss and for summary judgment are denied as to the false arrest claims of Leontay Ellington, John Adams, Dwayne Stewart, Yolanda Wallace, and as to Quarneeshia Walden's claim for false arrest relating to the traffic offense;

---

Minnie denies this and says she merely refused to answer his questions, which she submits does not constitute "hindering prosecution." Regarding Agee's assertion of qualified immunity, she states that there is no case that has held that refusing to answer questions constitutes "hindering prosecution." What is determinative, however, is that she has pointed to no case holding that it is *not* hindering prosecution to refuse to answer an officer's questions relating to a criminal investigation.

The motion for summary judgment is granted as to the false arrest claims of Arkica Stewart, Marcus Young, James Bankhead and Minnie Stewart and as to Quarneeshia Walden's claim for false arrest on the charge of domestic violence.

SO ORDERED this 18th day of March, 2025

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

40