IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LEROY SECHEREST, ET AL.**                                                                **PLAINTIFFS**

v.                                          **CIVIL ACTION NO. 3:24-cv-34-TSL-MTP**

**CITY OF LEXINGTON, ET AL.**                                                   **DEFENDANTS**

**ORDER**

THIS MATTER is before the Court on the Motion to Disqualify Counsel [104] filed by Defendants City of Lexington and the City's mayor, Robin McCrory. Having considered the parties' submissions, the record, and the applicable law, the Court denies the Motion [104] and declines to disqualify counsel at this time.

**BACKGROUND**

On January 20, 2024, seventeen Plaintiffs, all residents or former residents of the City of Lexington, Mississippi ("the City"), filed this action against the City, Mayor Robin McCrory, Police Chief Charles Henderson, former police chief Sam Dobbins, and police officers Aaron Agee, Cordarius Epps, Chris Burrell, Justin Newell, Laron Simpson, and Scott Walters. Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of their rights under the First, Fourth, and Fourteenth Amendments and allege racial discrimination in violation of Title VI of the Civil Rights Act of 1964.

On January 23, 2024, three days after the Complaint [1] was filed, Defendant Dobbins moved to disqualify Plaintiffs' nonresident attorney, Jill Collen Jefferson, from appearing *pro hac vice* in this action. *See* Motion [4]. Dobbins pointed out that Jefferson engaged in the unauthorized practice of law by signing the Complaint [1] without first being admitted *pro hac vice* or even seeking such admission. Dobbins also urged the Court to consider Jefferson's

1

extrajudicial comments, which, according to Dobbins, ran afoul of Mississippi Rule of Professional Conduct 3.6. *See* Reply [13]. Shortly after Dobbins moved to disqualify Jefferson, she applied for admission *pro hac vice*. *See* Motion [6].

The Court found that neither Jefferson's hasty, unauthorized appearance in this action nor her public statements warranted disqualification. *See* Order [18]. Accordingly, on April 16, 2024, the Court denied Dobbins's Motion [4] and granted Jefferson's *pro hac vice* application. *Id*. The Court, however, provided this warning: "Further contravention of the Rules of Professional Conduct and the Court's Local Rules may lead to disqualification or other sanctions" *Id*. at 8.

Arguing that further contravention of the Rules has occurred, the City and its Mayor ("Municipal Defendants") again moved to disqualify Jefferson as counsel in this action. *See* Motion [104]. Municipal Defendants assert that Jefferson has continued to make improper extrajudicial statements in violation of Mississippi Rule of Professional Conduct 3.6 and that she made unauthorized *ex parte* contact with Defendants in violation of Rule 4.2.[1] Additionally, Municipal Defendants call into question whether Jefferson satisfies the Local Rules' requirements for *pro hac vice* admission

## ANALYSIS

"The disqualification of counsel requires the court to balance the right of a party to retain counsel of its choice against the need to maintain the highest standards of the legal profession and to insure the integrity of the legal proceedings." *McLain v. Allstate Prop. & Cas. Ins. Co.*,

---

[1] Municipal Defendants, citing the docket generally, also assert that Jefferson has been responsible for "technical violations of the Local Rules, such as filing forms incorrectly, incorrectly filing memoranda, filing documents with another attorneys' signature, and failing to include the resident attorney's signature." *See* [105] at 3.

2017 WL 1513090, at *2 (S.D. Miss. Apr. 25, 2017).  As a substantive motion, a motion to disqualify counsel must be decided under federal law. *See F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995).  "[D]isqualification cases are governed by state and national ethical standards adopted by the court." *Id*.  Federal courts consider ethical standards set forth in the local rules, state rules, model rules, and model code. *Id*.  "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id*. at 1314.  "On a motion to disqualify, the movant bears the ultimate burden of proof." *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013).

"When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009).  Pursuant to the Court's Local Rules, admission to appear *pro hac vice* may be revoked if the attorney is suspended or disbarred; continued admission would be detrimental to the prompt, fair, and efficient administration of justice or detrimental to the legitimate interests of the parties (other than the attorney's client); the attorney's client would be at risk of receiving inadequate representation and cannot adequately appreciate the risk; or the Court determines there is just cause. *See* L.U. Civ. R. 83.1(8).  The Local Rules also provide that "[a]n attorney who makes an appearance in any case in the district court is bound by the provisions of the Mississippi Rules of Professional Conduct and is subject to discipline for violating them." *See* L.U. Civ. R. 83.5.  "A reviewing court also considers the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *In re ProEducation*, 587 F.3d at 299.

**Extrajudicial Statements**

According to Municipal Defendants, certain of Jefferson's public statements violated both Mississippi Rule of Professional Conduct 3.6[2] and the Court's prior orders. Municipal

---

[2] Rule 3.6 provides as follows:

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
>
> (2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;
>
> (3) the performance or results of any examination or test of the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;
>
> (4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;
>
> (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or
>
> (6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Notwithstanding paragraph (a) and (b)(1-5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

4

Defendants note that in this case, and two other cases in which Jefferson appeared *pro hac vice*, the Court instructed Jefferson to comply with Rule 3.6 after determining that multiple statements improperly impugned the defendants' character, credibility, and reputation. *See* Order [18]; Civil Action No. 3:22-cv-479-TSL-MTP, Docket No. [179]; Civil Action No. 3:23-cv-333, Docket No. [239]. Municipal Defendants argue that despite the Court's instruction, Jefferson continues to make improper public statements.

Plaintiffs respond that no reasonable lawyer would believe Jefferson's statements will have a substantial likelihood of prejudicing a jury. They also argue that the statements were permissible under the safe harbors of Rule 3.6. Specifically, they argue that the statements were permissible under two safe harbors allowing lawyers to "state without elaboration: . . . the information contained in a public record . . . [and] a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest . . . ." *See* Miss. Rule of Prof'l Conduct 3.6(c).

---

(1) the general nature of the claim or defense;

(2) the information contained in a public record;

(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest . . . .

*See* Miss. Rule of Prof'l Conduct 3.6.

According to Plaintiffs, Jefferson's statements were warnings of the likelihood of harm to the public interest and/or reiterations of information available in court records and/or a report concerning the City and its police department published by the Department of Justice ("DOJ") on September 26, 2024.

Many of the statements constitute a rephrasing of the information contained in public records, but not all. In this case and others,[3] the Court has emphasized the qualifier "without elaboration" found in the safe harbors of Rule 3.6(c) after finding that prior statements made by Jefferson went beyond information contained in the public record and impugned the character, credibility, and reputation of defendants. Here, Plaintiffs, citing *Gentile v. Bar. of Nev.*, 501 U.S. 1030 (1991), argue that this Court's reading of "without elaboration" is unconstitutionally vague.

The Court will attempt to cure any vagueness and make clear its expectations of all counsel: *counsel shall not impugn the character, credibility, and reputation of defendants with allegations not in the public record.*

As an example, Jefferson stated during a community meeting that "we all know that the elected officials here pay for votes." *See* [104-3]. Plaintiffs have neither demonstrated that this information is contained in the public record[4] nor shown that the citizens of Lexington should be so warned. This statement, unprotected by the Rule's safe harbors, runs afoul of Rule 3.6.

---

[3] *See* Order [18]; Civil Action No. 3:22-cv-479-TSL-MTP, Docket No. [179]; Civil Action No. 3:23-cv-333, Docket No. [239].

[4] In defense of this statement, Plaintiffs cite the amended complaint [46] filed in *Harris*, Civil Action No. 3:22-cv-479-TSL-MTP, a case concerning allegations that the City of Lexington and its police officers abused and harassed the black citizens by falsely arresting black citizens, subjecting black citizens to excessive force, and setting up roadblocks exclusively in black neighborhoods. Plaintiff specifically cites paragraph 93 of the amended complaint, which provides:
> Defendants have committed these acts of explicit racial animus against the backdrop of an extensive history of racism in Lexington, Mississippi. For example, the White officials of Lexington and Holmes County historically denied Black

6

The Court, however, is mindful of Jefferson's First Amendment rights and mindful that any restriction on speech must be the least restrictive means available, narrowly tailored, and based on a substantial likelihood of prejudicing the Court's ability to conduct a fair trial.[5] The Court is also mindful that "[d]isqualification of counsel . . . is an extreme and disfavored sanction . . . ." *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 602 (S.D. Tex. 1994); *see also Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976) ("A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel."). With that in mind, the Court declines to disqualify counsel at this time on this basis. Instead, the Court will remind Jefferson and all counsel to carefully consider their public statements to ensure compliance with their ethical obligations.

**Client Contact**

Municipal Defendants also argue that Jefferson communicated directly with the City and Mayor McCrory, violating Mississippi Rule of Professional Conduct 4.2's prohibition against

---

residents right to vote. It was not until the federal government intervened with the Voting Rights Act of 1965 (VRA) that Black people in Holmes County were truly able to register. The year before the VRA was passed, Holmes County had only twenty registered Black voters. But two years after the passage of the VRA, in 1967, there were over 6,000 Black voters registered in the County. Despite the passage of the VRA, the Black vote remained diluted, as local officials, including law enforcement, vigorously resisted registering Black people to vote. This voter dilution persists to this day and, in the wake of *Shelby County v. Holder* (2013), has worsened.

*See Harris*, Civil Action No. 3:22-cv-479-TSL-MTP, Docket No. [46] at ¶ 93. This does not contain any allegation that city officials pay for votes.

[5] *See U.S. v. Brown*, 218 F.3d 415, 424-27 (5th Cir. 2000); *Marceaux v. Lafayette City*, 731 F.3d 488, 492 (5th Cir. 2013).

communicating with a party represented by counsel. Rule 4.2 provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." See Miss. Rule of Prof'l Conduct 4.2.

On December 11, 2024, Jefferson—without consulting opposing counsel—emailed Mayor McCrory, attaching a letter directed to the Mayor and the City's Board of Alderman. The letter is from Jefferson representing JULIAN,[6] Lauren Bonds representing the National Police Accountability Project, Jarvis Dortch representing ACLU-Mississippi, and Emily Early representing the Center for Constitutional Rights. See [104-4].

The letter discusses the DOJ's September 26, 2024, report detailing alleged unconstitutional practices of the Lexington police department. The letter states that the DOJ will likely seek a consent decree to protect the rights of Lexington citizens, particularly its black citizens. The letter urges the City to agree to any proposed consent decree and warns that additional lawsuits may be filed if the City does not agree. Municipal Defendants seek Jefferson's disqualification based on her unauthorized communication with the Mayor and the City's Board of Alderman.

Plaintiffs argue that because Jefferson sent the communication on JULIAN's behalf, and not Plaintiffs', she was not "representing a client" as contemplated by Rule 4.2. Accepting this argument would allow Jefferson to contact parties without their lawyer's consent, as long as Jefferson is purportedly acting on behalf of a nonparty claiming to be interested in the subject

---

[6] JULIAN is a civil right organization founded by Jefferson, which purportedly "investigates, litigates, mounts civil rights campaigns, and uses technology, design thinking, and foresight in concert to end lynchings, unjustified police killings, and all other hate crimes and rights violations." See https://www.julianfreedom.org/about-us/what-we-do (last visited May 12, 2025).

8

matter of the litigation. And, it is not hard to imagine "JULIAN" being interested in all its founder's civil rights cases. The Court cannot condone such a circumvention of Rule 4.2.

Plaintiffs also argue that the letter did not violate Rule 4.2 because it concerned a separate matter than the instant case. The comment to Rule 4.2 states: "This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation." The comment goes on to provide the following example: "[T]he existence of a controversy between a government agency and a private party . . . does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter."

The Court finds that the subject communication was not a separate matter from this case. The subjects of both this case and the letter are law enforcement practices and alleged constitutional violations in the City of Lexington. Indeed, the authors of the letter cite this very case when noting that they had filed multiple lawsuits against the City "in line with some of the very patterns and practices exposed in the DOJ's report." *See* [104-4]. Additionally, Plaintiffs mentioned the DOJ's report in their Amended Complaint [60] and attached the report as an exhibit to their Response [97] in opposition to Defendants' Motion for Judgment on the Pleadings [82].

Finally, Plaintiffs argue the communication was "authorized by law," as it was an exercise of the constitutional right to petition the government. On this topic, the comment to Rule 4.2 states: "Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter."

The American Bar Association's Committee on Ethics and Professional Responsibility considered this issue in a formal opinion entitled *Communication with Government Agency*

9

*Represented by Counsel*.[7] Balancing the interests served by the no-contact rule against the constitutionally-based policy favoring citizen access to government decision makers, the ABA determined that the government exception to the no-contact rule should be subject to two important conditions:

> First, the government official to be contacted must have authority to take or recommend action in the controversy, and the sole purpose of the communication must be to address a policy issue, including settling the controversy.
>
> Second, because of the predictable difficulty of confining the scope of the communication to policy issues where a contacted official is also a potential fact witness, and in recognition that the government has a right to the active participation of its lawyers even where the right to petition applies, the Committee believes it essential to ensure that government officials will have an opportunity to be advised by counsel in making the decision whether to grant an interview with the lawyer for a private party seeking redress. Thus the lawyer for the private party must always give government counsel advance notice that it intends to communicate with officials of the agency to afford such officials an opportunity to discuss with government counsel the advisability of entertaining the communication. When the lawyer for the private party wishes to communicate in writing with government officials, the policy of fairness embodied in the rule also dictates that the lawyer must give government counsel copies of the written material at a time and in a fashion that will afford her a meaningful opportunity to advise the officials whether to receive the communication from the lawyer for the other side. This approach balances the constitutionally favored policy of affording direct access to government decision makers against the government's need to protect itself from overreaching by lawyers for private parties. Requiring the lawyer to give advance notice of an intended communication gives the government the benefit of most of the rule's salutary purposes, while obviating the possibility that government counsel could attempt to block access to their principals by invoking a rule of professional conduct.

*See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 97-408 (1997).

---

[7] The ABA Committee considered Model Rule 4.2 which is substantially identical to Mississippi Rule of Professional Conduct 4.2. Model Rule 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

10

The Court finds that this opinion provides a reasonable balance between important interests at issue here. Thus, the Court agrees with Plaintiffs that prior consent from Municipal Defendants' counsel was not required, but Jefferson should have given counsel prior notice of the communication. This violation, however, does not warrant the extraordinary sanction of disqualification. Rather, the Court will instruct all counsel to adhere to Rule 4.2 and the opinion provided in ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 97-408 (1997).

**Residence**

Municipal Defendants argue that it is "unclear" whether Jefferson satisfies Local Rule 83.1's eligibility requirements for non-resident admission. Local Rule 83.1 provides, in relevant part:

> A non-resident attorney is eligible for admission pro hac vice if that lawyer:
>
> ii. neither resides nor is regularly employed at an office in this state; or
>
> iii. resides in this state but (a) lawfully practices from offices in one or more other states and (b) practices no more than temporarily in this state, whether by admission pro hac vice on in other lawful ways . . . ."

*See* L.U. Civ. R. 83.1(d)(1)(A).

On January 23, 2024, Jefferson applied for admission *pro hac vice*, listing her office address as being in Covina, California. *See* Motion [6]. On April 16, 2024, the Court granted Jefferson's *pro hac vice* application. *See* Order [18].

Now, in the instant Motion, Municipal Defendants point out that Jefferson has listed a variety of addresses and that multiple media reports have indicated that Jefferson resides in Mississippi. On January 22, 2021, Jefferson submitted an application in the Circuit Court of Hinds County, Mississippi, stating that her residence was in Taylorville, Mississippi. *See* [119-2]. A Mississippi Free Press article from August 17, 2022, stated that Jefferson lived in Jones

County, Mississippi.[8]  On October 27, 2022, JULIAN registered an "Office of Lawyers" with the Mississippi Secretary of State. *See* [104-7].  In January 2024, when asked during a justice court proceeding where she resided, Jefferson replied: "Sometimes in Mississippi, sometimes in California." *See* [119-1].  A Washington Post article from July 3, 2024, noted that Hattiesburg, Mississippi, was home to both Jefferson and JULIAN. *See* [104-2].  An August 2, 2024, press release from the University of Virginia mentioned Jefferson sitting "in her office in Hattiesburg."[9]  On JULIAN's 990 tax form dated September 13, 2024, Jefferson's address is listed as being in Taylorsville, Mississippi. *See* [104-5].  Finally, on December 2, 2024, Jefferson submitted a public records request to the City and listed her address as in Hattiesburg, Mississippi. *See* [104-8].

As previously mentioned, admission to appear *pro hac vice* may be revoked if the attorney is suspended or disbarred; continued admission would be detrimental to the prompt, fair, and efficient administration of justice or detrimental to the legitimate interests of the parties (other than the attorney's client); the attorney's client would be at risk of receiving inadequate representation and cannot adequately appreciate the risk; or the Court determines there is just cause. *See* L.U. Civ. R. 83.1(8).  The Rules are notably silent as to whether disqualification is proper if an applicant moves to Mississippi after being admitted *pro hac vice*.

Plaintiffs note in their Response [118] that JULIAN is a national organization and has multiple mailing addresses.  They also point out that on December 2, 2024, Jefferson submitted a declaration stating that she was a resident of Sarasota, Florida. *See* [97-1] at 1.  Additionally,

---

[8] *See* https://www.mississippifreepress.org/black-lexington-plaintiffs-seek-restraining-order-against-police-for-harassment-coercion-and-threatening-conduct/

[9] *See* https://news.virginia.edu/content/divine-intervention-returned-uva-alumna-her-civil-rights-mission

Jefferson states in the Response that she "resides in Florida but receives personal mail at different locations for a variety of reasons as many young working professionals do." *See* [118] at 36.

Had Jefferson misled the Court about her residence when she applied for admission *pro hac vice*, it is likely that the Court would find just cause to revoke her admission. It is not clear where exactly Jefferson has resided since 2021, but Municipal Defendants, who bear the burden of proof, have failed to establish that Jefferson misled the Court concerning her residence. Additionally, Municipal Defendants admit they do not know the extent that Jefferson is practicing in other state courts. *See* [105] at 6. The Court declines to revoke Jefferson admission *pro hac vice*.

Municipal Defendants also argue that Jefferson has violated Mississippi Rule of Professional Conduct 5.5, which provides, in part, that: "A lawyer who is not admitted to practice in Mississippi shall not: (1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in Mississippi for the practice of law . . . ." *See* Miss. Rule of Prof'l Conduct 5.5(b)(1). According to Municipal Defendants, Jefferson violated this Rule by registering an "Office of Lawyers" with the Mississippi Secretary of State. *See* [104-7].

Plaintiffs respond that JULIAN has organizers and administrative staff based in Mississippi, but currently has no lawyers residing or practicing in Mississippi.[10] According to Plaintiffs, however, JULIAN intends to have lawyers in Mississippi in the future, and the business registration form submitted to the Secretary of State is meant to capture all the

---

[10] Presumably, Plaintiff mean that no lawyers, *other than Jefferson*, are practicing in Mississippi as Jefferson is participating, by admission *pro hac vice*, in multiple cases in Mississippi under JULIAN's name.

organization's current and future activities.  The current record does not establish that Jefferson violated Mississippi Rule of Professional Conduct 5.5.  Accordingly, the Court declines to revoke Jefferson's admission *pro hac vice*.

    IT IS, THEREFORE, ORDERED that the Motion to Disqualify Counsel [104] is DENIED.

    SO ORDERED this the 2nd day of June, 2025.

                                             s/Michael T. Parker
                                             UNITED STATES MAGISTRATE JUDGE