UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEROY SECHEREST, DAMION LEVY,
TYQWON WALDEN, MARCUS YOUNG,
ARKICA STEWART, COMECHIA RANDLE,
MINNIE STEWART,
QUARNEESHIA WALDEN, DORNELL
MALONE, JOHN ADAMS, DWAYNE
STEWART, YOLANDA WALLACE, CRYSTAL
WALLACE, LEON LEWIS, FREDERICK
JOHNSON, LEONTAY ELLINGTON AND
JAMES BANKHEAD, JR.                                      PLAINTIFFS

VS.                        CIVIL ACTION NO.: 3:24-cv-34-TSL-MTP

CITY OF LEXINGTON, ROBIN MCRORY,
CHARLES HENDERSON, AARON AGEE,
SAM DOBBINS, CORDARIUS EPPS,
CHRIS BURRELL, JUSTIN NEWELL,
LARON SIMPSON AND SCOTT WALTERS                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Cordarius Epps for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded to the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as set forth herein.

On January 20, 2024, seventeen plaintiffs, all residents or former residents of the City of Lexington, Mississippi, filed this

1

action against the City, Mayor Robin McCrory, Police Chief Charles Henderson, former police chief Sam Dobbins and several officers with the Lexington Police Department (LPD), including Cordarius Epps, asserting claims under 42 U.S.C. § 1983 for violations of their rights under the First, Fourth and Fourteenth Amendments. Eight of the seventeen plaintiffs in this action asserted claims against Epps. The court has previously dismissed the claims of two of those plaintiffs, James Bankhead, Jr. and Leon Lewis.[1] By his motion, Epps now seeks summary judgment as to claims asserted against him by five of the six remaining plaintiffs, namely, Leroy Secherest, Damion Levy, Marcus Young, Dornell Malone and Frederick Johnson.[2] The court separately addresses the motion as it pertains to the claims of each of these plaintiffs.

---

[1]   See Secherest v. City of Lexington, Civil Action No. 3:24cv34-TSL-MTP, slip. op. at pp. 40-41 (S.D. Miss. March 18, 2025) (dismissing claims of Lewis and Bankhead against all defendants on summary judgment motion by defendant Aaron Agee). Although any claim by Bankhead for money damages in connection with his arrest for public profanity is barred under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), because he was convicted of that offense, Bankhead argues in response to the present motion that Heck does not bar his claim against Epps for injunctive relief. In the complaint, however, Bankhead does not purport to seek injunctive relief against Epps; rather, his claim for injunctive relief is directed solely against the municipal defendants.

[2]   Epps states in his motion that he is "not seeking dismissal of Leontay Ellington's excessive force claim related to the November 4, 2022, arrest." However, there is no allegation in the complaint relating to a November 4, arrest. Rather, Ellington has

2

Leroy Secherest

According to Leroy Secherest's affidavit submitted in response to Epps' motion, on May 1, 2023, upon witnessing two LPD officers (one of whom was Epps) assaulting a mentally ill woman, he attempted to intervene, without success.  He then immediately went to the police station to report the incident to Chief Henderson, who was not interested in what he had to say.  A few days later, on May 4, Secherest posted a request on Facebook asking for video footage from anyone who may have recorded the assault.

Secherest alleges that the next day, in retaliation for his interfering in police business, Henderson lured Secherest to the community basketball court on Mulberry Street by arresting Secherest's son.  On that day, after receiving a phone call from his son, Trevion, saying he had been arrested, Secherest hurried from work to the basketball court to check on him.  Upon arriving at the scene, he found Henderson, Agee and Epps standing there

---

asserted claims of false arrest and excessive force against defendants Epps, Henderson and Justin Newell based on a September 2022 incident in which these defendants allegedly intentionally caused Ellington to crash into a bridge in an attempt to kill him and then falsely arrested him on charges of resisting arrest, possession of marijuana and traffic violations.  Epps has not argued for summary judgment on either the false arrest or excessive force claims asserted by Ellington relating to this alleged incident.

with a camera in their hands to record him.  As related in

Secherest's affidavit, he walked over to them and asked what

Trevion was charged with; Henderson told him public intoxication

and possession of a firearm.  Secherest began walking back to his

vehicle when Henderson called out to him, saying, "I've been

waiting to catch up with you.  You remember that incident with

that girl that you intervened in?  I'm going to tell you one time

to stay out of police business."  Secherest asked Henderson

whether he had watched the video of the assault on the woman that

a bystander had recorded, and, as Secherest was "stand[ing] calmly

in front of Henderson with [Secherest's] hands partially sticking

out of [his] pockets,"

> Agee suddenly rushed over to me and demanded that I take
> my hands out of my pockets even though I did not pose
> any threats, nor was I trying to breach the peace.
> My hands were already halfway out of my pockets, so
> it was clear that I was not holding a weapon.  I
> initially hesitated to remove my hands from my pockets
> completely from shock, as I watched all three officers
> place their hands on their tasers in a threatening
> manner.  I complied within seconds, and Agee told me I
> was under arrest.  I realized I was lured to the park
> just so I could be arrested by LPD.
> Henderson told me that I was being arrested and
> charged with failure to comply.  Agee then jerked my
> hands behind my back, squeezed my hands tightly and
> proceeded to cuff me.  I noticed Agee's hands were
> trembling from the force he applied.  I told him several
> times that the handcuffs were too tight as my fingers
> began to swell.
> I asked Henderson if he was going to allow Agee to
> assault me and he replied, "Yes, because you disobeyed

an officer's command."  Henderson smiled at me during
this exchange.
     I suddenly felt my feet leave the ground.  I then
realized Agee had picked me up and body-slammed me to
the ground.  Agee, who weighs roughly 400 pounds, jumped
on my back and put me in a chokehold.
     I struggled to breathe as I felt Henderson and Epps
poking my sides with their tasers.  I passed out but I
can recall feeling pain in my sides when I regained
consciousness, which leads me to believe I was tased by
Henderson and Epps.[3]

Secherest claims that after the officers placed him in the back of

a police car, they proceeded to illegally search his vehicle.

During the search, Agee falsely claimed to have found a small pack

of gummies in Secherest's car.  He also confiscated Secherest's

legally-owned firearm.  Secherest was charged with disorderly

conduct and possession of THC edibles and transported to the

Holmes-Humphreys Correctional Facility.

Based on these facts, Secherest has asserted causes of action

for false arrest in violation of the Fourth Amendment; retaliatory

arrest in violation of his First Amendment right to free speech;

and a Fourth Amendment excessive force claim.  Epps' motion for

summary judgment on each of these claims will be granted.

---

[3]    Secherest did not allege in the complaint that he lost
consciousness or was tased; rather, he alleged that as he was
lying on the ground, he "felt multiple tasers poking him in his
ribs."  The version of events in which Secherest lost
consciousness and was tased was first offered in Secherest's
affidavit submitted in response to Epps' motion.

It is undisputed that Epps was present at the scene of Secherest's arrest. However, bodycam video of the incident clearly refutes Secherest's version of events as it relates to Epps. The bodycam video, in relevant part, shows the following: As Henderson was speaking with Secherest, telling him not to intervene when police officers are dealing with someone, Agee and Henderson told Secherest repeatedly to take his hands out of his pockets (Secherest had one hand partially in his front pants pocket). When he failed to do so immediately, insisting he had done nothing wrong, Agee pulled out his taser. Secherest told him, "I wish you would. Do it. Do it." Henderson then pulled out his taser. Secherest asked, "What you going to tase me for?" Henderson told him, "You'd better calm down," and then immediately said, "You're under arrest." As Agee then started to handcuff Secherest behind his back, Agee suddenly grabbed Secherest around his neck and took him to the ground. Agee held Secherest facedown as he attempted to handcuff him, with Agee and Henderson repeatedly directing Secherest to "[p]ut your hands behind your back"; Secherest did not immediately comply. As Secherest was on the ground, Henderson held his taser against his back but did not tase him. Seconds later, Secherest was handcuffed and pulled back onto his feet. He was placed in a patrol car, after which

6

Henderson and Agee began a thorough search of his car, resulting in the seizure of gummies and Secherest's gun.

Secherest alleges that Epps tased him, asserting in his affidavit that he became unconscious as Agee held him in a chokehold and that when he came to, "LPD's tasers were poking him in his ribs, including Officer Epps.'" This claim, however, is thoroughly belied by the video evidence. The bodycam video shows, indisputably, both that Secherest was not unconscious at any time during this incident and that Epps did not tase him or so much as poke him in the ribs with his taser.[4] It also shows that Epps did

---

[4] Secherest has moved under Rule 56(d) for limited discovery and to stay consideration of Epps' motion in the interim. Among other things, he suggests that because Henderson's bodycam video does not comport with his own recollection of events, the video must have been edited or altered in some way; and therefore, he wants discovery of the metadata for the video. He also claims that to adequately respond to the motion, he needs the video footage from Epps' and Agee's body cameras. And he wants discovery, including depositions of each officer involved in Secherest's arrest, to discover information relating to "the specific actions each officer observed that they perceived as justifying use of force against Mr. Secherest; (6) what information Defendant Agee relied on in formulating a decision to use force; and (7) what training or guidance Agee relied on in making the decision to apply force."

Secherest claims that this discovery is necessary to resolve specific factual disputes, including "whether Mr. Secherest was tased, whether Epps had time to intervene, and whether Mr. Secherest was unconscious at any moment." But the video evidence already before the court (which in no way appears to have been edited or altered and the suggestion to the contrary is entirely speculative) clearly shows that Secherest was not tased; he was not unconscious at any time; and to the extent that it is even

not arrest or participate in Secherest's arrest or the search of his vehicle.

On the video, Secherest is visible for only a few seconds during the brief time he was on the ground, but he can be *heard* talking nearly the entire time; so obviously, he was never unconscious. The court acknowledges Secherest's argument in his surreply memorandum that "the video does not clearly show that Mr. Secherest was conscious throughout" because for about ten seconds immediately after he was put on the ground, his voice "is not obviously heard." However, for several of those ten seconds, Secherest is visible on the video, which shows him moving his legs and clearly conscious. Moreover, during those ten seconds, Epps can be seen standing several feet away from Secherest and thus incapable of tasing or poking Secherest with a taser.[5]

---

relevant, Epps did not have time to intervene. For this reason, and for all the additional reasons cogently explained in Epps' response to the motion, Secherest's motion for discovery is not well taken and will be denied.

[5] Secherest alleges that at one point during this encounter, prior to his arrest, both Epps and Henderson put their hands on their tasers in a threatening manner. It is not possible to determine from the video whether this occurred. But Epps could not have violated Secherest's right to be free from excessive force merely by placing his hand on his taser. Cf. Harris v. Dobbins, 3:22-CV-479-TSL-MTP, 2023 WL 2899994, at *17 (S.D. Miss. April 11, 2023) (finding no authority for proposition that "merely threatening an individual with a non-lethal taser violates the Fourth Amendment.").

As the video evidence clearly establishes that Epps did not arrest Secherest or participate in his arrest and he did not use excessive force or participate in Agee's alleged use of excessive force, Secherest's claims against him for false arrest and excessive force, as alleged in the complaint, fail as a matter of law. In his response brief, though, Secherest has offered an alternate claim against Epps, arguing that even if he did not personally participate in the arrest or in Agee's use of excessive force, Epps is nevertheless liable based on his failure to intervene to prevent the alleged violations of his constitutional rights. But as Epps correctly points out in his rebuttal, Secherest did not plead or so much as allude to a failure-to-intervene claim in his complaint or allege any facts that would support such a claim. And even were the court to construe Secherest's response as a request to amend to assert a failure-to-intervene claim, the court would deny amendment on futility grounds. See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile," meaning "that the amended complaint would fail to state a claim upon which relief could be granted.").

To establish a claim for failure to intervene, a plaintiff must plead and prove that the defendant officer (1) knew that a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) chose not to act. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). Secherest argues that Epps could and should have intervened to prevent both the allegedly unlawful arrest and the alleged excessive force.

Regarding the arrest, pretermitting consideration of whether there was probable cause, or arguable probable cause to conclude that Secherest was engaging in disorderly conduct,[6] it is clear from the video evidence that Epps had no reasonable opportunity to prevent the arrest. Secherest argues in his surreply that Epps

---

[6]    "[A] constitutional violation by another officer is a necessary element of the failure to intervene claim." Phillips v. Whittington, Civ. Action No. 17-cv-1524, 2020 WL 6332692, at *26 (W.D. La. Oct. 28, 2020) (citing Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.")). Agee previously moved for summary judgment as to the claims of several plaintiffs, but he did not seek summary judgment on Secherest's claims. Henderson has not yet filed a dispositive motion. The court need not consider on the present motion whether either violated Secherest's constitutional rights in order to conclude that Epps has no arguable liability for any alleged (or in this case, unalleged) failure to intervene.

had "opportunities to intervene when Agee began making unlawful commands,[7] when Agee inappropriately put his hand on his taser [and] while Agee continued to escalate the situation."  Yet Epps had no arguable obligation to intervene in these actions by Agee, which did not violate Secherest's constitutional rights.  And though Secherest further submits that he had an opportunity to intervene "when Agee wrongfully arrested Mr. Secherest," as is clear from the video, the interaction between Secherest and Agee/Henderson which culminated in Chief Henderson's sudden declaration that Secherest was "under arrest" escalated quickly and lasted mere seconds, giving Epps no reasonable opportunity to intervene.

The same is true for the alleged excessive force.  One second Secherest was on his feet with Agee attempting to handcuff him and the next second, he was on the ground; he was handcuffed and back on his feet in less than a minute.  Under these circumstances, Epps had no "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).[8]

---

7    The commands that Secherest remove his hands from his pockets were not unlawful.
8    Notably, Epps has raised qualified immunity as to all Secherest's claims.  Secherest has cited several cases in which officers have been found liable for failing to intervene, but none

For the foregoing reasons, Epps' motion for summary judgment will be granted as to the claims of Leroy Secherest.

Marcus Young

While the amended complaint includes claims by Marcus Young against various defendants relating to four separate incidents, Epps was involved in only two of those incidents.[9]  One of those

_____

is even remotely similar in any relevant way to the facts in this case.  Thus, even if it could be concluded that Epps had a reasonable opportunity to intervene (he did not), plaintiffs cannot overcome his qualified immunity.  "To overcome qualified immunity, plaintiffs must cite a body of relevant case law [] in which an officer acting under similar circumstances ... was held to have violated a defendant's constitutional rights," and "[w]hile there need not be a case directly on point, the unlawfulness of the challenged conduct must be "beyond debate." Jimerson v. Lewis, 94 F.4th 423, 429 (5th Cir. 2024) (quotation marks and citations omitted).

[9]    The amended complaint, in fact, only explicitly identifies Epps as having been involved in one of these incidents, specifically, a March 2023 incident in which Epps is alleged to have used excessive force.  The complaint also references a March 2022 arrest by the "LPD," without identifying the arresting officer, but Epps has acknowledged in his motion that he was the arresting officer on that occasion.

The court has previously dismissed Young's claims against two other officers, Scott Walters and Aaron Agee, relating to a December 2023 arrest in which Epps had no role.

The final incident alleged in the complaint is a March 2021 arrest by Sam Dobbins.  In his response to Epps' motion, Young acknowledges he did not allege that Epps was involved in this arrest.  He says this is because "he does not yet know the extent of [Epps'] involvement," and he urges the court to grant him "leave to amend the Complaint once more evidence of Epps' presence and involvement become known in discovery."  There is, however, no motion to amend presently before the court and hence no basis for this court to give any consideration to whether Young ought to be granted leave to amend now or at some future time.  The simple fact is, Young has not alleged a claim against Epps relating to

12

is a May 2023 incident in which Epps is alleged to have used excessive force. Epps contends he is entitled to summary judgment on this claim on the sole basis that Young asserted this claim under the Fourteenth Amendment rather than the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (claims that "law enforcement officials used excessive force in the course of making an arrest . . . are properly analyzed under the Fourth Amendment."). In response, Young acknowledges he mistakenly cited the Fourteenth Amendment as the basis of his claim and requests that he be allowed to amend to plead his claim under the Fourth Amendment. The request to amend will be granted.10

The other incident occurred in March 2022, when Young was stopped and arrested for not having a tag on his car. Young has asserted a claim against Epps for false arrest, not because he contends that Epps lacked probable cause to charge him with having no tag on his vehicle but rather because having no tag on one's vehicle is "not an arrestable offense." This, however, is

---

the March 2021 arrest because he has no facts or information to suggest that Epps had any involvement whatsoever in this arrest. That is the only relevant fact presently before the court.
10   Going forward, the court will consider and treat the complaint as having been amended to reflect that this claim is brought under the Fourth Amendment; it is not necessary that an amended complaint be filed.

13

incorrect.  By law in Mississippi, it is a misdemeanor to "operate or cause to be operated upon the highways of this state ... [a vehicle] without having the license tag or required license tag and decals affixed upon such vehicle as required by law."  Miss. Code Ann. § 27-19-131(1).  The punishment for this offense includes a fine of up to $100.00, "imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment."  Id.  Thus, contrary to Young's position, a no-tag violation is an arrestable offense.  Accordingly, Young's false arrest claim fails as a matter of law.[11]

Damion Levy

Damion Levy alleges in the complaint that in April 2023, upon arriving at the scene of a roadblock where defendant Henderson was arresting Levy's mother, Levy asked Henderson if he could retrieve his keys from his mother's car because they contained keys to his place of employment.[12]  He alleges that "[i]nstead of responding, defendant Henderson placed Mr. Levy under arrest, cuffing him,"

---

[11]    Epps has argued in his motion that Young's claim is in any event barred by Heck, because Young was convicted of the subject offense.  Young denies that he was convicted.  The court need not address this issue since the premise of Young's claim – that he could not be lawfully arrested for the offense – is unfounded as a matter of law.

[12]    While the complaint alleges that this arrest occurred in 2023, Levy acknowledges in his response that the correct date is April 2022.

and told him he was being charged with using public profanity and resisting arrest.  Then, "[w]ithout issuing any verbal commands to Mr. Levy, Defendant Henderson instructed Defendants Cordarius Epps, Chris Burrell, and Officer Kenneth Gee to hold down Mr. Levy, who remained cuffed with his hands behind his back, as Defendant Henderson tased him ...."  Based on these allegations, Levy has asserted a claim for excessive force, presumably against Henderson, Epps, Burrell and Gee.  He has further charged that "Defendant Henderson falsely arrested Mr. Levy in April 2023 [in violation of the Fourth Amendment] when he charged him with public profanity and resisting arrest," and that "[w]hen Defendant Henderson falsely arrested Mr. Damion Levy in April 2023, he charged him with public profanity, ... in violation of the First Amendment."

In his motion, Epps does not seek dismissal of Levy's excessive force claim against him.  He does, however, purport to seek summary judgment on Levy's claims against him for false arrest/unreasonable seizure and for violation of his First Amendment right to free speech.  But given that Levy has not alleged any such claims against Epps and that he has instead expressly and unambiguously asserted these claims solely against defendant Henderson, Epps' motion as to these claims is

superfluous; as no claims have been pled, there are no claims to dismiss.

Levy argues in his response that even though Henderson is the one who arrested him, Epps can still be held liable for his role in helping to effectuate the arrest by physically restraining Levy. No such claim appears in the complaint. But even were the court to interpret Levy's response as a request to amend to add a false arrest claim against Epps, the court would deny such request on the grounds of futility. Court records relating to Levy's April 2022 arrest show that he was found guilty and fined on charges of resisting arrest and disorderly conduct based on his plea of no contest in open court; and Levy has neither alleged nor offered proof that this conviction on these charges was overturned or otherwise invalidated. Accordingly, any potential claim against Epps for false arrest would be barred by Heck v. Humphrey. See Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated").

16

Dornell Malone

Dornell Malone alleges that he was arrested in July 2022 by
Epps and two other officers, who told him he was under arrest for
an active warrant.  He asked what the warrant was for but none of
the officers answered or produced the warrant.  Once he arrived at
the jail, he was informed that the charges were for improper
equipment, old fines, no vehicle tag, providing false information
and failure to stop for blue lights.  Malone alleges that when he
went to court, the judge dismissed four of the charges and that he
paid a fine to dispose of the three that were not dismissed.  He
later realized that he had already satisfied the warrant but he
was unable to prove the warrant had been satisfied because former
Lexington police chief Sam Dobbins had refused to give him a
receipt for the fines that he paid to resolve the charges.

Epps asserts that Malone has confused the date of his arrest
since there is no record that Malone was arrested in July 2022.
On the other hand, according to Epps, there is a record of
Malone's having been arrested in *September* 2022 on a warrant for a
charge of providing false information to an officer.  He points
out that court records show that in November, Malone was convicted
on a charge of providing false information to Officer Justin
Newell in August 2021, while related charges of failure to stop

for blue lights, disorderly conduct and resisting arrest were remanded to the file, all of which suggests that Malone has gotten his dates mixed up.

Malone maintains, however, that he has not confused the dates, and he has submitted an affidavit attesting that he was, in fact, arrested in July 2022 on what the arresting officers said was an active warrant, but which Malone later realized he had satisfied. Based on Malone's affidavit, the court accepts as true his allegation that the arrest that is the subject of his complaint occurred in July 2022, and not later, in September. However, regarding his July arrest, Malone has specifically alleged that when he appeared in court on the charges, the judge remanded three of the charges to the file, but he was required to pay a fine on the remaining charges. Thus, according to Malone's own allegation, he was convicted of some of the charges for which he was arrested and therefore, his false arrest claim is thus barred by Heck.[13]

Moreover, even if the claim were not barred by Heck, Epps would have qualified immunity, and this claim would be

---

[13] Even assuming the offenses for which Malone paid these fines were traffic offenses, Malone did not *prepay* the fines, and thus his argument that prepaying a traffic fine becomes a valid conviction only if the defendant had notice of his right to trial has no relevance to his situation.

18

dismissed.14  Malone alleges that he had previously satisfied the warrant so that it was no longer valid at the time of his arrest, but he has not alleged or offered proof that the arresting officers could not reasonably have thought the warrant was still active.  See Gibbs v. Boyd, No. 2:13-CV-2631 KJM DMC, 2019 WL 989870, at *2 (E.D. Cal. Feb. 28, 2019) (finding defendant officers entitled to qualified immunity on unreasonable arrest claim where plaintiff did not present any evidence to create a genuine dispute regarding whether defendants knew or should have known the warrant was invalid prior to its execution").  In this regard, not only has he not alleged or offered proof that there was any record of the warrant's having been satisfied, but he also affirmatively argues that "Lexington is reckless in maintaining its warrant system," and that it is "[t]his recklessness [that] led to Mr. Malone's Fourth Amendment violation."  Epps is not responsible for maintaining LPD's warrant system or ensuring its accuracy and in the absence of proof that he could not have

---

14   State officials may be entitled to qualified immunity from claims for money damages for their actions.  Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).  To overcome a qualified immunity defense, a plaintiff needs to plead and prove plausible facts "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

reasonably believed the warrant was valid, he is entitled to qualified immunity.

<u>Frederick Johnson</u>

Of the six incidents that are the subject of Frederick Johnson's claims in this case, two involve Epps. First, Johnson has asserted an excessive force claim against Epps relating to an October 6, 2022 incident. Epps has not moved for summary judgment on that claim. Second, Johnson has asserted a false arrest claim against Epps based on his February 27, 2023 arrest for trespassing at the Double Quik convenience store.[15] Epps has moved for summary judgment on Johnson's false arrest claim on the basis that bodycam video confirms that probable cause existed for the arrest in question. In the court's opinion, it does not, and therefore Epps' motion as to this claim will be denied.

According to Epps, the bodycam video establishes that he "had multiple interactions with Frederick Johnson after receiving complaints about Johnson"; that "[d]uring the first interaction, Epps found Johnson in possession of a controlled substance

---

[15] Johnson contends in his response that in addition to these causes of action, he has also asserted a First Amendment free speech claim relating to a public profanity charge and an excessive force claim relating to this February 2023 arrest. There is no hint of either claim, or of facts that could possibly support either claim in the complaint.

20

referred to on video as 'dope' and 'a roach,' but allowed him to leave without arrest"; that "rather than go home with the warning, Johnson returned to the Double Quick in Lexington where workers called the police department to report a disturbance with complaints of Johnson trespassing after being asked to leave and Johnson harassing customers and employees."

The video establishes none of these things. The bodycam video shows Epps pulling into the parking lot of the Double Quik and immediately grabbing Johnson, placing him in handcuffs and putting him in the patrol car. There is nothing in the video prior to the arrest that would even arguably tend to establish probable cause for Johnson's arrest.

The video shows that after he put Johnson in the patrol car, Epps walked toward the entrance to the store, commenting as he walked (to himself of individuals in the parking lot) that he "been dealing with him [Johnson] all damn day," and saying, "It don't make no damn sense. Let you go and you still go and do stupid shit." Epps then opened the door to the store, leaned inside and asked the store clerk, "What did he do?" Although largely inaudible, the clerk did say, "He needs to stay out of here." Epps headed back to the patrol car, talking again, saying, "You can't let people go. I let the man go. He had dope and

everything on him.  I let him go.  You come up here fucking with people.  Just don't know how to stop."

There is nothing in the video or in any evidence to show what information Epps had prior to his arrest of Johnson.  Epps' statements on the video (to himself or others) are not competent evidence of events that transpired earlier in the day; but even if Epps' statements were presented in an admissible form, his claims are disputed by Johnson, who has provided an affidavit in which he denies that Epps had found him with any illegal substances earlier in the day.  Epps' statements, moreover, do not tend to show that Epps had probable cause, or arguable probable cause to arrest Johnson for trespassing at the Double Quick.

Johnson does acknowledge in his affidavit that the "store had called the police."  No evidence has been presented, however, to show what the store reported to the police about Johnson's activities.  And the evidence indicates that prior to arresting Johnson, Epps did not attempt to find out from the clerk what Johnson had done.  Only after he had arrested Johnson did he ask the clerk, "What did he do?"

For his part, Johnson expressly denies that he had been at the store earlier in the day, or that the store had ever told him he could not come there, or that he was disturbing or harassing

anyone at the store.  In short, he denies that he had committed the offense of trespass.  <u>See</u> Miss. Code Ann. § 97-17-87 (making "willful or malicious trespass" a crime); <u>Ladd v. State</u>, 87 So. 3d 1108, 1116 (Miss. Ct. App. 2012) ("The elements of trespass include wilfully and maliciously entering another's property without permission or remaining on his or her property after being told to leave.").  Based on Johnson's affidavit, and the absence of any contrary evidence tending to demonstrate any basis for Epps to have concluded there was probable cause, Epps' motion for summary judgment on this claim will be denied.

<u>Conclusion</u>

Based on the foregoing, it is ordered that Epps' motion for summary judgment is granted in part and denied in part, as set forth herein.  It is further ordered that plaintiff's Rule 56(d) motion is denied.

SO ORDERED this 17th day of June, 2025

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

23