UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEROY SECHEREST, DAMION LEVY,
TYQWON WALDEN, MARCUS YOUNG,
ARKICA STEWART, COMECHIA RANDLE,
MINNIE STEWART, QUARNEESHIA WALDEN,
DORNELL MALONE, JOHN ADAMS, DWAYNE
STEWART, YOLANDA WALLACE, CRYSTAL
WALLACE, LEON LEWIS, FREDERICK JOHNSON,
LEONTAY ELLINGTON AND JAMES BANKHEAD, JR.          PLAINTIFFS

VS.                         CIVIL ACTION NO. 3:24-cv-34-TSL-MTP

CITY OF LEXINGTON, ROBIN
MCRORY, CHARLES HENDERSON,
AARON AGEE, SAM DOBBINS,
CORDARIUS EPPS, CHRIS BURRELL,
JUSTIN NEWELL, LARON SIMPSON
AND SCOTT WALTERS                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause was brought by seventeen plaintiffs against the
City of Lexington, Mississippi, Lexington Mayor Robin McCrory,
Lexington Police Chief Charles Henderson, former Lexington
Police Chief Sam Dobbins, and Lexington Police Officers Aaron
Agee, Cordarius Epps, Scott Walters, Justin Newell, Laron
Simpson and Chris Burrell, variously alleging claims under 42
U.S.C. § 1983 for violations of their rights under the First,
Fourth and/or Fourteenth Amendments.  Defendants City of
Lexington, Chief Henderson and officers Walters, Newell, Simpson
and Burrell (the "Municipal defendants") have filed a motion for
summary judgment, and Sam Dobbins has filed his own separate
summary judgment motion.  In response, plaintiffs have filed a

1

Rule 56(d) motion requesting to conduct "limited discovery" before being required to respond to the summary judgment motions.  The court, having considered plaintiffs' motion for discovery, finds that it is not well taken.

In their motion, Municipal defendants seek summary judgment on the claims, or some of the claims, asserted by ten plaintiffs, namely, Larry Secherest, Marcus Young, Comechia Randle, Damion Levy, Frederick Johnson, Dornell Malone, Yolanda Wallace, Minnie Stewart, Arkica Stewart and Quarneeshia Walden. In addition, they seek dismissal of plaintiffs' equal protection claims, the official capacity claims against the individual defendants, and their <u>Monell</u> and Title VI claims against the City.[1]  Dobbins has separately moved for summary judgment on plaintiffs' equal protection claims, the official capacity claims against him and on claims asserted against him by three plaintiffs, Comechia Randle, John Adams and Tyqwon Walden.

In their motion for discovery, plaintiffs advise that they will not oppose Municipal defendants' motion to the extent it seeks dismissal of (1) Marcus Young's false arrest claim against the City relating to his arrest for having no vehicle tag in March 2023 and any potential claim against Laron Simpson

---

[1]    Defendants Dobbins and Agee have filed joinders in the Municipal defendants' motion, and Epps has joined in specific portions of the motion.

relating to his December 2023 arrest for violating the City's open container ordinance; (2) Minnie Stewart's false arrest claim against the City relating to her July 19, 2023 arrest by Epps; and (3) Arkica Stewart's false arrest claim against Simpson and the City relating to her January 2024 arrest. They further advise that they will not oppose Dobbins' motion for summary judgment on John Adams' unreasonable seizure claim against him. Plaintiffs claim they need discovery to respond to all other aspects of defendants' motions.

To succeed on a Rule 56(d) motion, the movants must show "(1) why [they] need[] additional discovery and (2) how that discovery will create a genuine issue of material fact." January v. City of Huntsville, 74 F.4th 646, 651 (5th Cir. 2023). They cannot "rely on vague assertions" that more discovery is needed but must "set forth a plausible basis for believing that *specified facts*, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Id. (emphasis added). See also McCreless v. Moore Bus. Forms Inc., 111 F.3d 893, at *2-3 (5th Cir. 1997) (to obtain discovery, nonmovant must "ma[k]e a specific showing of what further discovery would reveal."). Plaintiffs have failed to make the required showing. They have not limited their requests for discovery to matters they could

3

potentially need to respond to the bases for summary judgment raised in defendants' motions. Rather, their requests for discovery in all respects are overbroad, and plaintiffs have not shown that the discovery they purport to seek is specifically related to the grounds for dismissal advocated by defendants. For these reasons and others, detailed below, the motion will be denied.

### Equal Protection/Title VI Claims

Plaintiffs claim that to adequately respond to defendants' motions on plaintiffs' equal protection claim, they need the following "[r]elevant discovery," identified in Section II.A.1 of their memorandum:

> (1) arrest and conviction records; (2) depositions of LPD officers with knowledge of the arrests at issue and of departmental policies and practices; (3) dashcam and body-worn camera footage; (4) communications evidencing racial bias, such as texts, emails, and instant messages; and (5) expert testimony analyzing police practices.

They contend these materials "would establish that LPD disproportionately stopped, arrested, and subjected Black residents to force, raising triable questions of discriminatory intent and effect."

To respond to defendants' motion on plaintiffs' Title VI claims, plaintiffs purport to need discovery of the following "relevant discovery":

> (1) records of federal funding received by the City

4

and LPD; (2) documents reflecting conditions attached
to federal funds and how those funds were used in law
enforcement; (3) comparator and statistical data on
stops, arrests, and charging decisions; (4) deposition
testimony from City officials and LPD leadership on
the use of funds, policies, and enforcement practices;
and (5) internal communications evidencing
discriminatory intent or knowledge of disparate
impacts.

They contend these facts will reveal "[f]ederal funding sources
and amounts, the role of federal dollars in sustaining LPD's
operations, evidence of racially disparate policing practices,
and contemporaneous statements or records confirming
discriminatory treatment of Black residents," and will establish
"(1) that Plaintiffs are intended beneficiaries of federally
funded law enforcement services, and (2) intentional
discrimination, proven through both direct and circumstantial
evidence."

Plaintiffs claim to need all this discovery, when in
substance, defendants' motions plainly seek dismissal of the
equal protection and Title VI claims solely on the basis that
the complaint does not state a claim on which relief can be
granted and, in the case of their equal protection claim, does
not plead facts sufficient to overcome the individual
defendants' qualified immunity.  Specifically, defendants argue
that plaintiffs' equal protection allegations fail to state a
claim because they are stated in wholly conclusory terms, see
Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir.

1994) ("a plaintiff must plead specific facts, not mere conclusory allegations," to survive a Rule 12(b)(6) motion to dismiss); that plaintiffs do not include a single non-conclusory factual allegation of a single instance in which any plaintiff was treated less favorably than a white person, see Hines v. Quillivan, 982 F.3d 266, 272 (5th Cir. 2020) ("To state a claim for equal protection, the plaintiff must prove that similarly situated individuals were treated differently.  Being similarly situated is key."); and that this claim is a quintessential example of shotgun pleading and should be dismissed, see Griffin v. HSBC Mortg. Servs., Inc., No. 4:14-CV-00132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) ("'Quintessential' shotgun pleadings also fail to distinguish between the actions of named defendants.  What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." (cleaned up)).

Municipal defendants argue that the complaint fails to state a claim against the City for violation of Title VI as the allegations are totally conclusory; the complaint contains "no plausible allegations that the City intentionally discriminated against" plaintiffs; and they "have not plausibly pled that they were the "intended beneficiary of" a "federally funded program."

Defendants have denominated their motions as "summary judgment motions," when it would have been more accurate to call them motions to dismiss and/or for summary judgment. Their failure to denominate them does not change the fact that as to some of the claims, defendants clearly seek dismissal under Rule 12(c), and not summary judgment. As to those claims, the motion is appropriately treated as a motion to dismiss under Rule 12(c). See Myers v. Moore, 326 F.R.D. 50, 58 (S.D.N.Y. 2018) (stating that "[a] court may convert a motion for summary judgment into a [Rule] 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party," that "[c]onversion is appropriate when the court does not examine extrinsic evidence, but instead bases its decision solely on the pleadings," and that where "defendants argue that they are entitled to summary judgment because a claim is insufficiently pled, courts evaluate the motion under the Rule 12(b)(6) standard." (citations omitted)).

Plaintiffs do not need and are not entitled to discovery to respond to a motion seeking dismissal under Rule 12(c). Accordingly, their motion for discovery on these claims will be denied.

### False Arrest, Excessive Force and First Amendment Claims

In describing the "categories of discovery" they contend are relevant to various plaintiffs' claims for "Unreasonable

7

Seizure, Excessive Force, Due Process Violations, and First

Amendment Claims," plaintiffs state the following in Section

II.A.4 of their motion:

> Discovery is ... essential to demonstrating whether
> the use of force and related procedural decisions
> departed from constitutional standards, whether
> Plaintiffs were afforded due process, and whether
> Plaintiffs' First Amendment rights were violated
> through enforcement of Lexington's unconstitutional
> profanity statute.
> ● Type of Discovery Sought: Relevant discovery
> includes (1) officer testimony and reports;
> (2) body-worn camera and dashcam footage, and, where
> absent, explanations for its unavailability; (3) 911
> call recordings, dispatch audio, and radio runs, which
> can corroborate or contradict officer accounts and
> show how events unfolded in real time;
> (4) use-of-force reports, arrest logs, and booking
> sheets, which often contain contemporaneous notations
> about the rationale for stops, charges, or restraints;
> (5) training manuals, policies, and standard operating
> procedures, which help establish the baseline against
> which officer conduct is measured;
> (6) internal affairs and/or disciplinary records,
> which may reveal prior complaints or findings of
> misconduct relevant to officers' intent and
> credibility; (7) medical records and photographs of
> injuries, documenting the extent of force used and its
> impact on Plaintiffs; (8) radio communications, text
> messages, and emails among officers, which can
> demonstrate planning, coordination, or animus; and
> (9) statistical data and arrest records, which may
> reveal patterns of racially disparate enforcement
> consistent with Plaintiffs' Equal Protection claims.

Plaintiffs contend these facts will show "whether officers had

probable cause or reasonable suspicion for seizures, whether

force used was excessive relative to circumstances, whether

disciplinary issues were ignored, and whether LPD's enforcement

practices disproportionately targeted Black residents," and

8

"will establish whether Plaintiffs were subjected to unreasonable seizures and excessive force and experienced violations of their Due Process and First Amendment rights."

Most of this evidence has no possible relevance to the bases for summary judgment asserted in defendants' motions; plaintiffs cannot even arguably need all this evidence to respond to the issues raised by defendants' motions. And while plaintiffs purport to have gone further and "detail[ed] the specific discovery" they claim to need to respond to the challenges defendants have asserted on the specific claims of the individual plaintiffs on which they seek summary judgment, they have not done so. On the contrary, in purportedly "specifically detailing" the discovery they claim to need to respond to defendants' motions on these various claims, plaintiffs broadly declare as to each plaintiff's claim(s) that in order to create genuine issues of material fact on any issue presented, they need "the discovery detailed in Section II.A.4," *supra*. For this reason alone, the court could deny their motion for discovery on these claims. Instead, the court will explain why, as to each of the claims on which defendants have moved for summary judgment or to dismiss, plaintiffs do not need or are not entitled to discovery before responding to the motions.

**Tyqwon Walden**:

Tyqwon Walden has asserted false arrest claims against

9

Dobbins relating to two incidents.  Dobbins has moved for

summary judgment only as to Walden's claim based on the

following allegations:

> One day in late 2021, Tyqwon Walden was walking down a
> street in Lexington when Defendant Sam Dobbins
> arrested him and took him to the police station.
> Defendant Dobbins claimed that someone had identified
> Mr. Walden as an individual who had broken into their
> house.  However, when the person told Dobbins that Mr.
> Walden was not the person they had identified, Dobbins
> became angry but finally let Mr. Walden go.

In his motion, Dobbins points out that "[t]he Fourth

Amendment is not violated by an arrest based on probable cause,

even if the wrong person is arrested, if the arresting officer

had a reasonable, good faith belief that he was arresting the

correct person."  Id. (citing Hill v. California, 401 U.S. 797,

91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971)).  Dobbins argues that,

at a minimum, he is entitled to qualified immunity based on the

allegations of the complaint, both because Walden has alleged

that Dobbins arrested him because "Dobbins believed that

'someone had identified Mr. Walden as an individual who had

broken into their house,'" and because Walden has not alleged

that Dobbins did not act in good faith, that is, that he did not

have a reasonable, good faith belief that Walden was the correct

person.  Plaintiffs claim that they need "the discovery detailed

in Section II.A.4" to respond to Dobbins' motion in this regard.

As with the Municipal defendants' motion on plaintiffs'

equal protection and Title VI claims, while Dobbins has

denominated his motion as a "motion for summary judgment," his

motion as to Walden's claims clearly challenges only the

sufficiency of the pleadings, and specifically, Walden's failure

to plead facts sufficient to overcome Dobbins' qualified

immunity.  The motion as to Walden's claim will therefore be

treated as a motion to dismiss under Rule 12(c).  See Myers, 326

F.R.D. at 58 (supra).  In the court's view, it is particularly

appropriate to convert a summary judgment to a motion to dismiss

where, as here, the defendant's only challenge is to the

sufficiency of the complaint to overcome a qualified immunity

defense.

        The Fifth Circuit has held:

        Where public officials assert qualified immunity in a
        motion to dismiss, a district court must rule on the
        motion.  It may not permit discovery against the
        immunity-asserting defendants before it rules on their
        defense.  See [Backe v. LeBlanc, 691 F.3d 645, 648
        (5th Cir. 2012)] (It is "*precisely* the point of
        qualified immunity ... to protect public officials
        from expensive, intrusive discovery *until and unless*
        the requisite showing overcoming immunity is made."
        (second emphasis added)).
        . . .
        It is true that to ensure qualified immunity can be
        decided at the earliest possible time, we have
        authorized "discovery narrowly tailored to rule on
        [defendants'] immunity claims."  Backe, 691 F.3d at
        649.  . . .  The district court must first find that
        the plaintiff has pleaded "facts which, if true, would
        overcome the defense of qualified immunity."  [Zapata
        v. Melson, 750 F.3d 481, 485 (5th Cir. 2014).]  If it
        still finds itself "unable to rule on the immunity
        defense without further clarification of the facts,"

11

> ibid. (quotation omitted), then we allow the district
> court to order discovery "narrowly tailored to uncover
> only those facts needed to rule on the immunity
> claim," [Wicks v. Miss. State Emp. Servs., 41 F.3d
> 991, 994 (5th Cir. 1995)(quoting Lion Boulos v.
> Wilson, 834 F.2d 504, 507-08)].

Carswell v. Camp, 54 F.4th 307, 311 (5th Cir. 2022).  Therefore, because the court has determined that the motion should be treated as a motion to dismiss based on qualified immunity, the court at this time will deny Walden's motion for discovery as to this claim.[2]

**Comechia Randle**

Comechia Randle has asserted claims for excessive force and false arrest against defendants Newell, Burrell and Dobbins relating to a February 11, 2022 incident in which she was arrested at a roadblock.[3]  Specifically, Randle alleges that upon

---

[2]    In their motion for discovery, plaintiffs argue that "Dobbins cannot invoke qualified immunity at this stage.  Mr. Walden's allegation is that Dobbins fabricated or manipulated witness statements in order to create the appearance of probable cause."  There is no such allegation in the complaint.

[3]    Plaintiffs assert in their discovery motion that "Ms. Randle alleges that her stop was part of Defendants' broader policy and strategy of focusing checkpoint enforcement in majority-Black areas of Lexington and not majority-white areas of Lexington, all while generating revenue for both the City and Lexington Police Department."  They "respectfully request[] the discovery detailed in Section II.A.4 ... as further support establishing genuine disputes of material fact regarding Defendants' discriminatory application of the roadblock program."  In fact, however, Randle makes no such claim.  She alleges only that she stopped at a roadblock and was asked to pull over when she was unable to produce proof of insurance.  She has not alleged that the subject roadblock itself violated her constitutional rights.  Plaintiffs are not

being stopped at a roadblock, the officer noticed her insurance card was out of date and asked her to pull over to the side of the road.  Officer Newell approached her car from the passenger side and asked for her license.  Randle explained that her insurance was current, but she had not yet received her new card.  Newell responded that he was going to give her a ticket, but she could go to court and likely get the charge dismissed if she could prove her insurance was in effect on the date of the ticket.  He then walked away with her license.  Randle alleges:

> Moments later, Defendant Newell approached [her] driver's side window and told her to step out of the vehicle.  She asked why but still complied and began to get out anyway.
> After she got out of the car, Defendant Newell grabbed her arms and slapped handcuffs on her wrists.
> After he said nothing, Ms. Randle turned around and asked Newell over and over again "Why am I being arrested?"  He said nothing.  At some point Defendant Newell's body camera went blank, making it difficult to see what is happening, however according to Ms. Randle when she asked him again why she was being arrested Defendant Newell threw her to the ground without warning.
> Defendant Newell then called for Officer Chris Burrell who knelt on top of Ms. Randle's back.  Defendant Newell then tased her for what felt like an entire minute, sending constant and continuous voltage through Ms. Randle's body, torturing her, even though she was already handcuffed, was not resisting, and posed no threat.
> Ms. Randle is less than five feet tall, but she was assaulted by three officers....
> Officer Burrell finally reached down and yanked her up from the ground and violently threw her in the backseat of a police car, yelling obscenities in her ear the whole time.

entitled to discovery on a claim that has not been pled.

13

As for Dobbins, Randle alleges that while at the police

station, she watched Dobbins

> come in, yelling obscenities at everyone. . . . [She]
> asked Chief Dobbins if she could make a phone call, to
> which he replied, 'Ain't nobody making a motherfucking
> phone call today. Everybody is going to jail.' Ms.
> Randle pleaded with Defendant Dobbins not to send her
> to jail because she was starting a new job the next
> day and did not want to miss her first day of work.
> She asked what needed to be done to resolve the matter
> and requested to use the phone again.
> Ms. Randle called her mother and told her what was
> going on, including that she believed her finger to be
> broken from LPD throwing her to the ground.  She then
> asked her mother to hurry because LPD would be taking
> her to jail if she did not arrive soon.  When
> Defendant Dobbins heard Ms. Randle tell her mother
> about her injury, he snatched the phone from her hand,
> hung it up, and told her to forget about her job
> because she was going to jail.  Defendant Dobbins said
> he would send her to jail if her mother did not arrive
> at the police station within ten minutes with the
> money to get her out.  She cried and begged to be
> released.
>       LPD took her to jail.

In support of their summary judgment motion, Municipal

defendants have offered Newell's bodycam video of Randle's

arrest, which they contend clearly demonstrates both that there

was probable cause for the arrest and that no excessive force

was used against her.  They argue in response to plaintiffs'

motion for discovery that because the bodycam video captured the

entire incident, discovery is not needed as discovery will not

reveal any facts, material or otherwise, which are not already

known to the parties and to the court.  The court, having viewed

14

the video, concurs in defendants' assessment.  Plaintiffs have
identified no discovery which would likely add any relevant
information to that already before the court.

As the basis for her false arrest claim, Randle alleges
that "Newell and Burrell also falsely arrested her, initially
claiming that she lacked insurance, then accusing her of
assaulting an officer, and finally, resisting arrest.  Ms.
Randle had not committed any of these offenses."  In fact,
however, in addition to proving that Randle was unable to
provide proof of insurance, it also establishes that Newell,
upon checking Randle's license, was informed there was an
outstanding warrant for her arrest.  This video evidence clearly
shows that Newell had probable cause to arrest Randle on the
basis of the outstanding warrant.  Plaintiffs have not
identified any evidence that could possibly uncover in discovery
that could potentially refute this proof.

In Dobbins' motion relating to this incident, he argues
that Randle's claims against him fail because she has not
alleged that he participated in her arrest or the alleged
excessive force.  Plaintiffs contend in their motion that "[t]he
police report ... directly rebuts this assertion, documenting
[Dobbins'] active involvement in the arrest."  The arrest report
to which they refer reads, in part, "I, Officer Newell radioed
dispatch for backup because she was fighting me and Officer

15

Burrell and Chief Dobbins responded and told her to quit fighting and get on the ground or she would be tased." Plaintiffs further assert that on the bodycam video, "An officer, presumably Sheriff Dobbins, states: 'You didn't get down on the ground like we told you to.  So you got tased.'" Plaintiffs argue that this evidence "is dispositive," and that based on this evidence, "Dobbins's liability is ... clear." They claim "the recording places him squarely at the center of the alleged excessive force against her," and "directly refutes" Dobbins' claim that he did not actively participate in the arrest or the alleged excessive force.  Yet they also claim that the need "the discovery detailed in Section II.A.4, *supra,*" to "further" establish genuine disputes of material fact regarding Dobbins' use of excessive force against her.  Clearly, based on their own arguments, plaintiffs have not demonstrated a need for discovery to respond to Dobbins' motion, much less a need for "the discovery detailed in Section II.A.4."

### Yolanda Wallace

Municipal defendants have moved for summary judgment on Yolanda Wallace's false arrest claim against Henderson, Newell, Simpson and the City.  As to Henderson, defendants argue that the undisputed evidence establishes there was probable cause for Wallace's arrest.  They further argue that Newell and Simpson did not play a meaningful role in the arrest and thus cannot be

16

liable, and that each of these defendants is entitled to qualified immunity.

On a previous summary judgment motion by defendant Aaron Agee, the court, upon review of the evidence, including bodycam footage and Wallace's affidavit, found it was "clear that the facts relating to the stop of Wallace's vehicle are in dispute," and, "viewing the facts in the light most favorable to Wallace," that it could not conclude there was probable cause, or arguable probable cause for the stop. The court thus denied Agee's motion.

On their present motion, Municipal defendants suggest that in ruling on Agee's motion, the court failed to consider certain evidence, namely, that the bodycam video shows that Wallace admitted to careless driving. The court finds defendants' arguments in their motion unpersuasive and remains firmly of the opinion that disputed issues of fact preclude summary judgment on the issue of whether there was probable cause, or arguable probable cause for the stop. Accordingly, plaintiffs do not need discovery relating to the circumstances of the stop.

Defendants point out that Simpson arrived on the scene after the arrest was already taking place and that while he assisted in effectuating the arrest, he had no role in the decision to make the arrest; and they argue that even assuming Henderson did not have probable cause, Simpson had no reason to

know probable cause was lacking.

Defendants argue, similarly, that Newell arrived on the scene after the stop and only in time to see Wallace refusing to exit her vehicle.  According to defendants, based on the information available to Newell at the time, he had probable cause or, at least arguable probable cause for the arrest, and is thus entitled to qualified immunity for false arrest or any purported bystander claim.

In their motion for discovery, plaintiffs argue on the one hand that "[b]odycam footage confirms [Simpson and Newell] were present and had opportunities to prevent or stop the unlawful seizure," and yet on the other, claim to need discovery "to establish genuine disputes of material fact regarding Defendants Newell and Simpson's presence and ability to intervene in constitutional violations against her."  In the court's opinion, given the existence of the bodycam footage, discovery on these issues is not warranted at this time.  Plaintiffs should be fully capable of responding to the motion without the requested discovery.

### Dornell Malone

Dornell Malone was arrested at the Double Quik by Epps and Henderson in July 2022, ostensibly for an active warrant. Malone asserted a claim for false arrest based on his allegation that the warrant on which he was arrested was no longer active.

18

This court has already granted summary judgment to Epps on Malone's false arrest claim, finding that his claim was barred by Heck. The court so ruled based on Malone's admission in his affidavit that while the Lexington municipal court dismissed some of the charges on which the warrant was based, he paid fines to resolve the remaining charges and thus stood convicted of those charges. See Secherest v. City of Lexington, Civ. Action No. 3:24-cv-34-TSL-MTP, 2025 WL 1699687, at *7 (S.D. Miss. June 17, 2025). The court went on to observe that even if Malone's false arrest claim were not Heck barred, Epps would be entitled to qualified immunity because Malone had not alleged or offered proof that the arresting officers, including Epps, could not reasonably have thought the warrant was still active. Id.

In their present motion, Municipal defendants contend that Malone's false arrest claim against Henderson and the City is barred by Heck, as the court has previously ruled, and, alternatively, that for the same reason Epps is entitled to qualified immunity, so is Henderson.

In their motion for discovery, plaintiffs submit that Municipal defendants "misunderstand the theory of liability for Defendants Henderson and the City." They state:

> Mr. Malone does not claim his convictions are invalid. In fact, Mr. Malone concedes that he was convicted of at least some crimes (the specifics of which are not clear from the record). Rather, Mr. Malone's claim challenges the systemic failure of the warrant system

19

to keep updated information regarding his arrest
history and resolution of cases that led to his
deprivation of rights.  That failure resulted in his
unlawful arrest and seizure, independent of the
validity of his convictions.  Thus, Heck poses no bar
to his claims against Defendant Henderson and the
City.

They thus claim to need all manner of discovery relating to the

City's warrant system and whether the warrant for Malone should

have remained in LPD's database at all.  Their position,

however, is unfounded.

First, contrary to their urging, plaintiffs, including

Malone, have not pled a claim based on reckless maintenance of a

warrant system against the City, Henderson or any defendant.

Plaintiffs dispute this, but the court, having carefully

reviewed the complaint, including the specific paragraphs

plaintiffs identify as constituting this claim, concludes

without doubt that no such claim is even arguably set forth in

the complaint.

Further, Heck would bar such a claim in any event.  As

defendants point out, success on Malone's claim that the warrant

was not valid and that he paid fines for (and was thus convicted

of) charges that did not exist because they had already been

satisfied, would imply the invalidity of the conviction.  See

Goldston v. City of Monroe, 621 F. App'x 274, 278 (5th Cir.

2015)(claim that arrest warrant lacked probable cause was barred

by Heck because any showing of a lack of probable cause is in

20

essence a collateral attack on the conviction); Torgerson v. Henderson Cnty., Civ. Action No. 6:21-CV-00390-JDK-JDL, 2022 WL 2154872, at *5 (E.D. Tex. Apr. 26, 2022), report and recommendation adopted, 2022 WL 2155948 (June 14, 2022) (plaintiff's false arrest claim found Heck barred because his conviction could not co-exist with his allegations that the arrest warrant was invalid).

### **Quarneeshia Walden**

Quarneeshia Walden has asserted claims of false arrest relating to three separate incidents occurring in November 2022, November/December 2022 and in August 2023.  The court previously granted summary judgment to Aaron Agee relating to the August 2023 incident as the bodycam video of the incident showed there was clear probable cause for Walden's arrest on that occasion.  See Dkt. 122, at 32.  Defendants now seek summary judgment for the City for that claim on the basis that there is no underlying constitutional violation to support municipal liability.  Plaintiffs state in their motion for discovery that they do not seek discovery on this claim and that they "intend[] to acknowledge that it is foreclosed in Plaintiffs' eventual summary judgment opposition."  They maintain, however, that they do require discovery as to the November 2022 and November/ December 2022 incidents.

Regarding the November 2022 incident, Walden alleges that

21

defendant Newell pulled her over for failing to come to a complete stop at a stop sign.  Walden alleges she told Newell it was not her but the truck in front of her that had failed to stop, "but Newell did not listen.  Instead, he requested her driver's license and insurance policy information.  She gave him the documents, and he allowed her to go home."

Municipal defendants point out in their summary judgment motion that according to her own allegations, Walden was not arrested and thus has no cognizable claim for "false arrest." They further argue that to the extent Walden may claim to be asserting a cause of action for unlawful seizure as opposed to unlawful arrest, not only has she failed to plead sufficient facts to show that Newell lacked reasonable suspicion for the stop, as she must do to overcome his qualified immunity, but in fact, the facts she has alleged demonstrate that he had at least arguable reasonable suspicion for the stop.  That is, defendants maintain that even accepting as true plaintiff's allegation that she came to a complete stop at the stop sign, nevertheless, in light of her further allegation that the truck in front of her failed to stop, it follows that Newell "reasonably but mistakenly believed" that plaintiff failed to stop such that there was reasonable, or at least arguable reasonable suspicion for the stop.  See Lewis v. Rosenberg Police Dep't, Civil Action No. 4:22-CV-02593, 2023 WL 3668536, at *4 n.4 (S.D. Tex. May 25,

2023) ("The initial stop was nevertheless lawful since this could qualify as a reasonable but mistaken judgment that is not plainly incompetent.").

Accepting defendants' characterization of the motion as to this claim as, in substance, seeking dismissal for failure to state a claim sufficient to overcome Newell's qualified immunity, the court finds it appropriate to convert the motion to a Rule 12(c) motion. Therefore, plaintiffs' motion for discovery as to this claim will be denied.[4]

Walden has also asserted a false arrest claim relating to an incident in November or December 2022 in which she was stopped by defendants Agee and Newell for a claimed seatbelt violation. Walden alleges that as she and her ex-boyfriend were driving down Highway 12, she noticed a police cruiser approaching them from the opposite direction. The cruiser made a U-turn and pulled to the side of the street; then, as Walden drove past, the officers turned on the blue lights and pulled her over. "She asked them the reason for the stop, and Defendant Agee said it was because she was not wearing her seatbelt. Ms. Walden questioned how they could see if she wasn't wearing the seatbelt when they were traveling in the opposite direction on a four-lane highway. Defendant Agee

---

[4]    Plaintiffs will be allowed to amend to clarify that their claim is for an "unreasonable seizure," not a false arrest.

repeated that he did not see her seatbelt on. . . ."

Municipal defendants argue that although the court denied Agee's summary judgment motion on this claim, which sought dismissal of this claim on <u>Heck</u> grounds, the claim against Newell should be dismissed based on plaintiffs' failure to allege his personal participation in the arrest and/or the existence of reasonable suspicion/probable cause.  As to lack of personal participation, they assert that Walden's only allegation about Newell is that "Agee and Newell" pulled her over.  They submit there are no further allegations against Newell related to this incident.  As to reasonable suspicion/probable cause, they point out that although Walden alleges that she questioned if Agee could see that she was not wearing a seatbelt, she does not allege that she was wearing a seatbelt.  They argue that in <u>Harris v. Dobbins</u>, Civ. Action No. 3:22-CV-479-TSL-MTP, 2023 WL 2899994, at *14 (S.D. Miss. Apr. 11, 2023), the undersigned decided this same issue, holding that the plaintiff did not adequately allege that there was no probable cause or that the arresting officer could not reasonably have concluded there was probable cause, and that the plaintiff thus failed to state a claim for false arrest where he did not allege that he was wearing a seatbelt or that the officer could not have seen whether he was wearing a seatbelt. <u>Id.</u> at *14.

Plaintiffs assert in their discovery motion, first, that "Newell's role in initiating the stop is a core factual dispute that requires discovery." Yet, defendants have not asserted that Newell did not participate in the stop; and they acknowledge in their motion that Walden has alleged that both "Agee and Newell" pulled her over, i.e., initiated the stop.

Plaintiffs next argue that this stop "presents unique factual disputes that are distinct from Harris, namely whether Ms. Walden was wearing her seatbelt, and whether Agee and Newell could reasonably make that observation while traveling in the opposite direction on a four-lane highway." They claim they need discovery because defendants' arguments hinge on such contested factual disputes.

However, particularly given their reliance on Harris, defendants appear to be taking the position that plaintiffs have failed to adequately state a claim for relief because plaintiff Walden, like the plaintiff in Harris, has not *alleged* that she was wearing a seatbelt and has not *alleged* that the officers could not have seen whether she was wearing a seatbelt but rather has alleged only that she "questioned how they could see if she wasn't wearing the seatbelt when they were traveling in the opposite direction on a four-lane highway." The gist of their motion as to this claim is that Walden's claim fails on the pleadings, including because her allegations are not

25

sufficient to overcome Newell's qualified immunity.  That is how the court interprets their motion, i.e., as advocating for dismissal under Rule 12(c) (as they confirm in their response to plaintiffs' discovery motion).  For that reason, plaintiffs are not entitled to discovery.[5]

### Leroy Secherest

Municipal Defendants move for summary judgment on Leroy Secherest's claims against defendant Henderson for false arrest excessive force and First Amendment retaliation relating to his May 1, 2023 arrest, arguing that (1) probable cause supported the arrest, (2) Chief Henderson did not use excessive force, and (3) Henderson is entitled to qualified immunity.  There is bodycam video of this incident, as detailed in this court's earlier opinion granting defendant Epps' motion for summary judgment on Secherest's claims.  See Secherest, 2025 WL 1699687, at *2-5.  Suffice it to say, given the video evidence of the encounter at issue, plaintiffs have not demonstrated what discovery they could possibly need (and certainly not the

---

[5]    Even if they were seeking summary judgment instead of dismissal, plaintiffs have not demonstrated that discovery is warranted on this claim.  Walden knows whether she was wearing a seatbelt and hence needs no discovery on that issue.  And plaintiffs have failed to identify specific discovery they need on the issue of whether the officers could possibly have seen whether she was wearing a seatbelt, and instead, claim to need "the discovery detailed in Section II.A.4," none of which relates to this issue.

discovery "detailed in Section II.A.4"), or what they might reasonably expect to be gained through discovery, that could influence the outcome of defendants' motion.

### Damion Levy

Damion Levy has asserted claims for false arrest and violation of his First Amendment free speech rights against Henderson, and an excessive force claim against Epps, Burrell, Henderson and Gee relating to his April 2022 arrest for public profanity and resisting arrest. This court previously granted Epps' motion for summary judgment on the false arrest and First Amendment claims as superfluous because "Levy has not alleged any such claims against Epps and that he has instead expressly and unambiguously asserted these claims solely against defendant Henderson." Id. at *6. The court further observed that any potential request by Levy to amend to add false arrest/First Amendment claims against Epps would be denied on the grounds of futility because

> [c]ourt records relating to Levy's April 2022 arrest show that he was found guilty and fined on charges of resisting arrest and disorderly conduct based on his plea of no contest in open court; and Levy has neither alleged nor offered proof that this conviction on these charges was overturned or otherwise invalidated. Accordingly, any potential claim against Epps for false arrest would be barred by Heck v. Humphrey. See Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

27

> conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate
> that the conviction or sentence has already been
> invalidated").

Id.

Municipal defendants argue that summary judgment should be entered in favor of Henderson on Levy's claims for false arrest and violation of his First Amendment free speech rights (and in favor of Burrell any such potential claim against him) based on the court's earlier ruling that Levy's false arrest and First Amendment claims against Epps would be Heck barred.  Citing DeLeon v. City of Corpus Christi, 488 F.3d 649, 656-57 (5th Cir. 2007), and Arnold v. Town of Slaughter, 100 F. App'x 321, 324 (5th Cir. 2004), they further argue that "these same convictions also bar Levy's excessive force claim."

Relative to this incident, Levy alleges in the complaint that upon arriving at the scene of a roadblock where defendant Henderson was arresting Levy's mother, Levy asked Henderson if he could retrieve his keys from his mother's car because they contained keys to his place of employment.  He alleges that "[i]nstead of responding, defendant Henderson placed Mr. Levy under arrest, cuffing him," and told him he was being charged with using public profanity and resisting arrest.  Then, "[w]ithout issuing any verbal commands to Mr. Levy, Defendant Henderson instructed Defendants Cordarius Epps, Chris Burrell,

and Officer Kenneth Gee to hold down Mr. Levy, who remained cuffed with his hands behind his back, as Defendant Henderson tased him ...."

In support of Epps' earlier summary judgment motion, Epps presented as an exhibit two pages from what appears to be the "Municipal Court Docket" for the "City of Lexington, Miss." which reflect that on June 23, 2022, Levy "appear[ed] in open court" and "enter[ed] a plea of no contest" to charges of "disorderly conduct - failure to obey officer" and "resisting arrest."  Municipal defendants rely on this same exhibit in support of the present motion.

In their motion for discovery, plaintiffs broadly argue that "[t]he Court should allow discovery into *all* of Defendants' Heck arguments because Defendants *often* failed to submit reliable evidence establishing the existence of any alleged convictions." (emphasis added).  They argue that while defendants rely on municipal court docket books and affidavits to establish convictions,

> these materials are largely inadequate.  The docket
> book pages are often illegible, reference documents
> that are not in the record, and fail to disclose the
> date of the alleged criminal conduct, making it
> impossible to determine the offense and fact of
> conviction. Furthermore, the docket book pages
> frequently omit whether a defendant actually entered a
> guilty plea and what sentence, if any, was imposed for
> that conviction.

Plaintiffs thus submit that "[d]iscovery into the circumstances

of these arrests and any alleged convictions is necessary to identify material facts and resolve Defendants' Heck arguments."

Plaintiffs' argument, however, is not specific to any plaintiff or plaintiffs.  And they do not argue that defendants' evidence of Levy's convictions is inadequate.  They state only that "[s]ubject to discovery that produces admissible and reliable evidence of a conviction and in light of the Court's prior rulings, Mr. Levy may concede that his unreasonable seizure claim is foreclosed in Plaintiffs' eventual summary judgment opposition."  But they have not claimed that the docket book pages pertaining to Levy are illegible, or that the subject pages fail to disclose the date of the alleged criminal conduct or that they omit whether Levy actually entered a plea of "no contest" or the sentence that was imposed for his convictions.  More pertinently, plaintiffs would not need discovery in any event to create a genuine issue of material fact on the issue whether he was convicted.  Levy presumably knows the outcome of the charges against him, and specifically, whether he was convicted.  Accordingly, he is not entitled to discovery on this issue.

Plaintiffs also argue that "broader discovery should be permitted into Municipal Defendants' Heck arguments relating to Mr. Levy's First Amendment claims against Defendant Henderson and excessive force claims against the other defendants."

30

Discovery is not required, however, because their arguments relating to these claims are legal, not factual.  To the point, plaintiffs argue that Levy's First Amendment claim is not <u>Heck</u> barred because Levy was not convicted of public profanity. Plaintiffs do not need to refute evidence that Levy was convicted of public profanity as defendants have presented no evidence of any such conviction.  The sole issue, it seems, is the legal one of whether under <u>Heck</u>, his convictions for resisting arrest and disorderly conduct would bar his claim against Henderson that his arrest for public profanity violated his rights under the First Amendment.

Likewise, while the issue of whether under <u>Heck</u>, a conviction for disorderly conduct and/or resisting arrest would bar a related excessive force claim depends on the facts presented, here, defendants' motion does not challenge Levy's factual allegation that the alleged excessive force, which consisted of being forcefully restrained and tased, occurred *after* he was arrested for resisting arrest and placed in handcuffs.  Thus, the issue presented is not factual, but legal, and does not require discovery.

### **Frederick Johnson**

Municipal Defendants seek dismissal of four of Frederick Johnson's six claims for false arrest.  Specifically, they contend that his claims relating to his arrests on October 6,

31

2022, May 20, 2023 and June 22, 2023 are <u>Heck</u> barred, and that his claim relating to his June 9, 2023 arrest fails as the arrest was supported by probable cause.  In their motion for discovery, plaintiffs state that they are not asserting a false arrest claim relating to Johnson's October 6, 2022 arrest but want "limited discovery" relating to the other three claims.

<u>The June 9, 2023 Arrest</u>:  Johnson alleges in the complaint that on or around June 9, 2023, on a routine trip to the Double Quick gas station for coffee, "for no known reason, the store manager called the police when he began preparing his cup."  Two LPD officers arrived and asked to search his bookbag.  When he said no, they grabbed him, wrestled him to the ground and tased him.  They then took him to the Holmes Humphreys Correctional Facility where he remained for roughly two weeks until he could bond out.

Municipal defendants contend in their motion that this arrest actually occurred on June 3, 2023, not June 9, and seek summary judgment on Johnson's false arrest claim on the basis that the arrest was supported by probable cause, as evidenced by the "Voluntary Statement" of the store manager, in which he stated that an unknown male – that he later identified as Johnson – entered the store, purchased a cup of coffee, left, and then returned with an empty cup, which he took to the back of the store and filled with coffee.  According to the

statement, Johnson refused to pay for the coffee, and became rude and obnoxious, whereupon the manager called the police. Defendant Scott Walters arrived and arrested Johnson for petit larceny and trespass.

In their motion for discovery, plaintiffs, referring to the statement of the store manager, first argue that the "hearsay account of a third party" is not competent Rule 56 material and thus cannot support their request for summary judgment. Plaintiffs are mistaken. As defendants correctly point out, the statement is not hearsay because it is not offered for the truth of the matter asserted, i.e., that Johnson stole a cup of coffee, but rather to show that the store manager reported to police that Johnson stole a cup of coffee, thus giving them probable cause for his arrest. See Porter v. Lear, 751 F. App'x 422, 433 (5th Cir. 2018) ("The challenged statements were not offered to prove the truth of what they said—that is, that Porter was actually involved in the armed robberies. Instead, they are offered to show what the officers knew during the investigation and their reasoning in making their probable cause determinations.").

Plaintiffs next note that Johnson's version of events, as alleged in the complaint, "differs sharply" from defendants. They then state:

Municipal Defendants argue that Mr. Johnson is

incorrect about when this event occurred, and that
there was probable cause to arrest Mr. Johnson because
they were told by the owner of the Double Quick that
Mr. Johnson had stolen a cup of coffee, which is the
basis for the arrest.  These are the exact kinds of
factual disputes that can only be resolved with the
benefit of discovery.  Mr. Johnson respectfully
requests the discovery detailed in Section II.A.4,
supra, to establish genuine disputes of material fact
regarding the existence of probable cause and
excessive force.[6]

Plaintiffs have not demonstrated that "additional discovery will

create a genuine issue of material fact."  Bailey v. KS Mgmt.

Servs., L.L.C., 35 F.4th 397, 401 (5th Cir. 2022).

Defendants' position in their motion is straightforward,

namely, that the evidence shows the store manager called the

police (as Johnson himself alleges) and reported that Johnson

had stolen a cup of coffee, giving them probable cause for his

arrest.  While Johnson may deny that he stole the cup of coffee,

the issue presented by defendants' motion is not whether he in

fact committed the offense but whether the officers had probable

cause, based on the store manager's report, to believe he had

done so.  On this issue, plaintiffs have not identified what

specific facts they would hope to uncover in discovery which

could affect the outcome of defendants' motion.  Instead, they

merely broadly declare that they "need the discovery detailed in

Section II.A.4 to establish genuine disputes of material fact

---

[6]    Municipal defendants have not sought summary judgment on
Johnson's excessive force claim.

regarding the existence of probable cause."  The "discovery detailed in Section II.A.4," *supra*, is overly broad and not geared toward identifying any specific facts plaintiffs could obtain through discovery that would bear on the existence of probable cause for Johnson's arrest.  Plaintiffs have not otherwise undertaken to identify any such facts.  The motion for discovery as to this claim will be denied.

The May 20, 2023 and June 22, 2023 Arrests:

Johnson has alleged a false arrest claim based on a May 20, 2023 arrest, in which he claims that he was arrested by James Jackson (who is not a defendant) and charged with old fines, open container, possession of paraphernalia, and public drunkenness, even though the cup he was carrying "did not contain alcohol, and [he] had not been drinking."  Municipal defendants contend Johnson's false arrest claim relating to this arrest is barred by <u>Heck</u> based on court records which show that on June 22, 2023, he appeared in open court where he pled guilty to possession of paraphernalia and was fined $250, and pled not guilty to the open container charge but was found guilty and fined $300.[7]

Johnson has also alleged a false arrest claim relating to an arrest by defendant Walters on June 22, 2023 for petit

---

[7]    The record reflects he was found not guilty to the public drunkenness charge.

larceny and trespass.  Municipal defendants contend in their motion that this arrest actually occurred on July 9, 2023, and that Johnson's claim for false arrest relating to this arrest is barred by Heck based on court records which show that on September 28, 2023, Johnson appeared in open court, entered a plea of "not guilty" and was found guilty of petit larceny in Case No. 71979, and trespassing in Case No. 71980, and sentenced to five days in jail, with two days time served, and a total of $1,000 fine plus assessments.

In their motion for discovery, plaintiffs argue that defendants' evidence does not prove that Johnson was convicted for possession of paraphernalia on June 22, 2023, noting that while defendants have offered a "photograph of the docket book with a stamped entry indicating that it 'appear[s]' that Mr. Johnson is guilty of a charge described in an 'affidavit made against him,' [t]hat affidavit is not in the record, so Mr. Johnson lacks important details, including how this conviction relates to the May 20, 2023 arrest, if at all." They make similar objections to defendants' evidence of his open container conviction.

Likewise, plaintiffs argue that defendants' evidence does not prove that Johnson was convicted for petit larceny and trespassing on September 28, 2023, claiming while the photograph of the docket book entries reflect that "it 'appear[s]' that Mr.

36

Johnson is guilty of a charge described in an 'affidavit made against him,' the affidavit offered by defendant does not "t[ie] these particular affidavits to these charges in the docket book."

Plaintiffs thus purport to need "the discovery detailed in Section II.A.4, *supra*, to establish genuine disputes of material fact regarding these purported convictions."  Clearly, however, Johnson should know whether he was convicted of any of the subject charges and does not need discovery to create a genuine issue of material fact on this issue.

### Municipal Liability

Plaintiffs seek discovery on their claims against the City, including

> (1) training manuals and curricula used by LPD; (2) disciplinary and internal affairs files; (3) records of officer hiring and promotion decisions; (4) complaints and lawsuits filed against LPD and their resolution; (5) deposition testimony of policymakers, including Chiefs Dobbins and Henderson, regarding policymaking decisions and awareness of unconstitutional practices; (6) personnel files, training materials, prior complaints, policymaker deposition testimony, and internal records.

They claim this evidence with show "[t]hat LPD leadership and the City were aware of unconstitutional practices and chose to ignore or perpetuate them," and "will establish whether the City's deliberate choices in training, supervision, and policymaking were the 'moving force' behind the constitutional

violations Plaintiffs suffered."

Municipal defendants, however, seek summary judgment/ dismissal of claims against the City solely on the basis that the City cannot be liable to the extent there is no underlying constitutional violation.  As the motion is based on the viability of the claims for the underlying claims for alleged constitutional violations, and as plaintiffs are not entitled to discovery on those underlying claims, they have no separate need for discovery on their claims against the City.

**Conclusion**

Based on the foregoing, it is ordered that plaintiffs' motion to discovery is denied.  It is further ordered that plaintiffs' response to defendants' motions shall be due fourteen days from entry of this order.

SO ORDERED this 13th day of January 2025.


/s/ Tom S. Lee                    
UNITED STATES DISTRICT JUDGE