UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEROY SECHEREST, DAMION LEVY,
TYQWON WALDEN, MARCUS YOUNG,
ARKICA STEWART, COMECHIA RANDLE,
MINNIE STEWART, QUARNEESHIA WALDEN,
DORNELL MALONE, JOHN ADAMS, DWAYNE
STEWART, YOLANDA WALLACE, CRYSTAL
WALLACE, LEON LEWIS, FREDERICK JOHNSON,
LEONTAY ELLINGTON AND JAMES BANKHEAD, JR.                PLAINTIFFS

VS.                                  CIVIL ACTION NO. 3:24-cv-34-TSL-MTP

CITY OF LEXINGTON, ROBIN
MCRORY, CHARLES HENDERSON,
AARON AGEE, SAM DOBBINS,
CORDARIUS EPPS, CHRIS BURRELL,
JUSTIN NEWELL, LARON SIMPSON
AND SCOTT WALTERS                                           DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on a motion for summary judgment by the City of Lexington and defendants Charles Henderson, Chris Burrell, Justin Hewell, Laron Simpson and Scott Walters and a separate summary judgment motion by defendant Sam Dobbins.[1]  Plaintiffs have responded to the motions and the court, having considered the memoranda of authorities, together with attachments submitted by the parties, concludes the motions should be granted in part and denied in part, as set forth herein.

---

[1]    Defendants City of Lexington, Charles Henderson, Chris Burrell, Justin Hewell, Laron Simpson and Scott Walters may be referred to herein as "defendants" or "Municipal defendants." Dobbins will be referred to as "Dobbins" or "defendant Dobbins."

This lawsuit was brought by seventeen plaintiffs against the City of Lexington, Mississippi, Lexington Mayor Robin McCrory, Lexington Police Chief Charles Henderson, former Lexington Police Chief Sam Dobbins, and Lexington Police Officers Aaron Agee, Cordarius Epps, Scott Walters, Justin Newell, Laron Simpson and Chris Burrell, variously asserting claims under 42 U.S.C. § 1983 for alleged violations of their rights under the First, Fourth and/or Fourteenth Amendments. This court has previously issued opinions in this cause dismissing plaintiffs' claims against Robin McCrory, [Dkt. 125] and granting in part and denying in part separate summary judgment motions by defendants Cordarious Epps and Aaron Agee [Dkts. 122, 152].[2]  In addition, the court has recently issued a lengthy opinion on plaintiffs' Rule 54(d) motion for discovery in connection with the present motions in which it set out the facts and the parties' arguments for and against summary judgment.  [Dkt. 184].

---

[2]    Agee moved for judgment on the pleadings or, alternatively, summary judgment on the claims, or some of the claims, of each of the eleven plaintiffs who asserted causes of action against him.  The court issued a 40-page opinion on March 18, 2024, in which the motion was granted in part and denied in part.  [Dkt. 122].

Cordarius Epps subsequently moved for partial summary judgment on the claims of five of the original eight plaintiffs who had brought claims against him.  On June 17, 2025, the court issued its 23-page opinion granting in part and denying in part his motion.  [Dkt. 152],

As noted in the court's opinion in plaintiffs' Rule 54(d) motion, defendants moved for summary judgment on the claims, or some of the claims, asserted by ten plaintiffs, namely, Larry Secherest, Marcus Young, Comechia Randle, Damion Levy, Frederick Johnson, Dornell Malone, Yolanda Wallace, Minnie Stewart, Arkica Stewart and Quarneeshia Walden.  In addition, they have sought dismissal of all plaintiffs' equal protection claims, the official capacity claims against the individual defendants, plaintiffs' Monell and Title VI claims against the City, and the claims for injunctive relief.  Dobbins has separately moved for summary judgment on plaintiffs' equal protection claims, the official capacity claims against him and on claims asserted against him by three plaintiffs, Comechia Randle, John Adams and Tyqwon Walden.

Plaintiffs advise that in light of the court's prior opinions/rulings, they do not contest several of defendants' arguments, including defendant Dobbins' arguments.  They specifically acknowledge that the following claims are foreclosed by the court's prior rulings on the motions filed by Agee and Epps:  (1) Arkica Stewart's false arrest claim against Agee, Simpson and the City relating to her January 2024 arrest;[3]

---

[3]    The court has been advised by plaintiffs' recently-filed surrebuttal that Arkica Stewart has died.  Since her claims do not survive defendants' dispositive motions, there is nothing further to be done in this regard.

3

(2) Marcus Young's false arrest claim against the City relating to his March 2023 arrest; (3) Quarneeshia Walden's unreasonable seizure claim against the City relating to her August 8, 2023 arrest; (4) Minnie Stewart's false arrest claim against the City relating to her July 19, 2023 arrest; (5) Leroy Secherest's excessive force claim against Epps relating to his May 2023 arrest; (6) Marcus Young's false arrest claim against Epps relating to his December 2023 arrest; and (7) Damion Levy's false arrest claim against Henderson and the City.  They further acknowledge that the following claims are foreclosed by the court's order denying their discovery motion: (1) Comechia Randle's unconstitutional roadblock claim and her false arrest claim relating to her February 2022 arrest, and (2) Dornell Malone's claim based on reckless maintenance of the warrant system.[4]  Lastly they advise that they do not oppose Dobbins' motion on John Adams' unreasonable seizure claim against him. Accordingly, none of the referenced claims will be addressed herein.

As the court has issued several prior opinions describing and addressing the claims of each plaintiff and most of the applicable legal standards and principles, the court will not do

---

[4]     Although plaintiffs acknowledge that the court's prior rulings foreclose these claims, they reserve their right to appeal the rulings on these claims on the grounds described in their prior briefs.

so herein.  Rather, the court will simply set out the grounds for its rulings on the motions as to each of the claims on which dismissal is sought, starting with the claims of individual plaintiffs against individual defendants.

Quarneeshia Walden

In the court's opinion, defendants have not demonstrated that summary judgment is in order on Quarneeshia Walden's claim against Newell for unreasonable seizure relating to the November 2022 stop by Newell for her purportedly having run a stop sign. Defendants argue that while Walden has alleged that she did not run the stop sign, her further allegation that the truck in front of her did run the stop sign demonstrates that Newell had reasonable suspicion to believe she had run the stop sign.  In the court's opinion, however, it does not follow from the mere fact that another vehicle ran the stop sign that a reasonable officer in Newell's position could have believed that Walden ran the stop sign.  The motion by Newell as to this claim will be denied.

Regarding the incident in which Walden was stopped in November or December of 2022 for allegedly failing to wear her seat belt and then arrested for the seat belt violation and for not having proof of insurance, the court, in ruling on Walden's motion for discovery, construed defendants' motion as seeking dismissal on the pleadings for failure to state a claim on which

relief could be granted.  The court expressly ruled that the motion as to this claim would be converted to a Rule 12(b)(6) motion.  It did so because defendants' arguments focused solely on the sufficiency of Walden's allegations, and specifically, her failure to allege any of the following: that she was wearing a seat belt at the time of the stop; that at the time the stop was initiated, Newell would not have been able to see whether she was wearing a seat belt such that he could not have had reasonable suspicion for the stop; and that Newell personally participated in the stop.

Despite the court's having converted the motion to a Rule 12(b)(6) motion, Walden, in her response to defendants' motion, has offered an affidavit in which she attests that in fact, she was wearing her seat belt on the occasion in question and that at the time the officers supposedly observed that she was not wearing a seat belt, they were three lanes away from her, traveling in the opposition direction, such that they could not possibly have seen whether she was wearing a seat belt.

The court will consider Walden's affidavit and reconvert the motion to a summary judgment motion.  But even considering the affidavit, the court finds that Walden's claim for false arrest fails based on her admission that at the time of her alleged arrest, she did not have proof of insurance.  As defendants correctly point out, this is an arrestable offense.

6

See Miss. Code § 63-15-4(4) (failure of owner or operator of a motor vehicle "to have the insurance card in the motor vehicle, or to display the insurance card by electronic image on a cellular phone or other type of electronic device, is a misdemeanor. ..."); see also S.M.K.S. v. Youth Court of Union Cty., 155 So. 3d 747, 750 (Miss. 2015) ("It is well settled that an officer may make an arrest for a misdemeanor committed in his presence without a warrant." (quoting Bird v. State, 154 Miss. 493, 122 So. 539, 540 (1929)).[5]  The motion for summary judgment will be granted and this claim will be dismissed as to all defendants.[6]

---

[5]   Notably, even if the officers lacked reasonable suspicion or probable cause to believe Walden had committed a seat belt violation, as stated above, her claim for false arrest still fails as a matter of law based on her lack of proof of insurance.  That is true even though the officers would otherwise not have known about the insurance infraction.  Cf. Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); Ellis v. Pinckley, Civ. Act. No. 22-03452025 WL 284641, at *3 (W.D. La. Jan. 23, 2025) (observing that "the Supreme Court has never applied the exclusionary rule to civil cases, state or federal." (quoting Wren v. Towe, 130 F.3d 1154, 1158 (5th Cir. 1997)).
[6]   Agee previously moved for summary judgment on Walden's false arrest claim relating to this incident on Heck grounds. The court denied his motion.  See Dkt. 122, at 31-32.  However, for the same reason the claim should be dismissed against Newell, it should also be dismissed against Agee.

7

Yolanda Wallace

In ruling on plaintiffs' motion for discovery, the court found defendants' arguments in their motion relating to the existence of probable cause for the stop "unpersuasive" and stated that it "remain[ed] firmly of the opinion that disputed issues of fact preclude summary judgment on the issue of whether there was probable cause, or arguable probable cause for the stop." Dkt. 184, at 17. Defendants ask the court to reconsider its opinion on that issue. The court declines to do so. Accordingly, the motion for summary judgment on Wallace's claim against Henderson will be denied.

As for defendant Newell, he admits that he participated in Wallace's arrest but points out that he arrived on the scene only after Wallace had already been stopped by Henderson and Agee. He states that upon his arrival, he witnessed Wallace repeatedly refusing to exit her vehicle in response to Henderson's command and that he therefore had probable cause, or at least arguable probable cause, to believe she was engaging in disorderly conduct so that he is entitled to qualified immunity.

Defendant Simpson similarly points out that he had no role in the decision to arrest Wallace and that in fact, when he arrived on the scene, Newell was already placing her in handcuffs. He maintains he did not violate Wallace's

8

constitutional rights but that he is, at the least, entitled to qualified immunity on her claim for false arrest.

In the response, Wallace argues that while Henderson and Agee ordered the arrest, Newell actually made the arrest by handcuffing Wallace, placing her in his police cruiser and transporting her to the police station for booking. Simpson, she notes, also actively participated in the arrest by assisting Newell. She submits that because both were active participants in her arrest, they cannot avoid potential liability for her false arrest. Her position is not well founded.

As Wallace acknowledges, neither Newell nor Simpson had any personal involvement in the decision to arrest her, and there is no suggestion, or more pertinent, evidence that either had any reason to believe that her arrest was not lawful. Accordingly, both are at a minimum entitled to qualified immunity. Cf. White v. Pauly, 580 U.S. 73, 80 (2017) ("Clearly established law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures, such as officer identification, have already been followed. No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers in instances like the one White confronted here."); Westfall v. Luna, 903 F.3d 534, 547 (5th Cir. 2018) (no bystander liability where there was no proof that

9

officers who arrived after the allegedly false arrest either knew that the other officers acted without lawful authority); Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (requiring for § 1983 liability under a theory of bystander liability that the officer "know[] that a fellow officer is violating an individual's constitutional rights" (quoting Randell v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002))).[7]

Damion Levy

Damion Levy was arrested in April 2023 and charged with disorderly conduct, resisting arrest and public profanity. Although Levy acknowledges the court has ruled that his Fourth Amendment false arrest claim is barred by Heck, he submits that Heck does not bar his separate First Amendment claim based on his arrest on the public profanity charge since he was never convicted of public profanity. In the court's opinion, however, under Heck, his conviction on the charges of disorderly conduct and resisting arrest bars not only his Fourth Amendment false arrest claim but also his First Amendment claim. See Poole v. Russell, Civ. Action No. 14-0611, 2016 WL 6082041, at *4 (W.D. La. Oct. 18, 2016) ("Where a plaintiff was arrested for crimes of which he was ultimately convicted, Heck bars recovery for

---

[7] Defendants correctly point out that Wallace has not alleged a claim of bystander liability; but even had she done so, the claim would fail.

free speech retaliation because the conviction necessarily implies that there was probable cause for the arrest."). These claims will be dismissed.

The court will, however, deny defendants' motion as to Levy's excessive force claim. Levy alleges in the complaint[8] that after he was placed under arrest, handcuffed and told by Henderson that he was being charged with public profanity and resisting arrest, Henderson,

> [w]ithout issuing any verbal commands to Mr. Levy, instructed [Epps, Burrell and Gee] to hold down Mr. Levy, who still remained cuffed with his hands behind his back, as Defendant Henderson tased him in the back for several seconds, despite the fact that he was already subdued, was not resisting, and did not pose a threat.

The law is clear: "[A] claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." Sampy v. Rabb, 144 F.4th 796, 799 (5th Cir. 2025) (quoting Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008)). This is precisely what Levy alleges occurred. Therefore, Heck does not bar his excessive force claim.

---

[8]    References herein to the "complaint" are to the amended complaint at Dkt. 60.

Leroy Secherest[9]

Defendant Henderson and the City have moved for summary judgment on Leroy Secherest's false arrest, First Amendment retaliation and excessive force claims relating to his arrest for failure to obey/disorderly conduct.  The circumstances leading to the arrest, as captured on bodycam video, are detailed in the court's prior opinion granting defendant Epps' motion for summary judgment on Secherest's claims against him. In relevant part, the video shows the following:

> As Henderson was speaking with Secherest, telling him not to intervene when police officers are dealing with someone, Agee and Henderson told Secherest repeatedly to take his hands out of his pockets (Secherest had one hand partially in his front pants pocket).  When he failed to do so immediately, insisting he had done nothing wrong, Agee pulled out his taser.  Secherest told him, "I wish you would. Do it. Do it."  Henderson then pulled out his taser.  Secherest asked, "What you going to tase me for?"  Henderson told him, "You'd better calm down," and then immediately said, "You're under arrest."

Dkt. 152, at 11.

Defendants argue that Secherest's false arrest and First Amendment retaliation claims fail due to the existence of probable cause.  They note that in its opinion on Epps' motion, the court stated that "[t]he commands that Secherest remove his hands from his pockets were not unlawful," id. at 11 n.7, and

---

[9]    The court notes that in prior opinions, it has mistakenly referred to Mr. Secherest as "Larry" rather than his correct name, Leroy.

12

they argue that because Secherest did not immediately remove his hands from his pockets as ordered, Henderson had probable cause to arrest him for failure to comply in violation of Mississippi Code Annotated § 97-35-7, which states, in pertinent part:

> Whoever, with intent to provoke a breach of peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to: (i) Act or do or refrain from or doing as doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command.

Miss. Code Ann. § 97-35-7(i).

In response to defendants' motion on the false arrest and First Amendment retaliation claims, plaintiffs argue that because Henderson lacked reasonable suspicion to believe Secherest was engaged in criminal activity, then Secherest "was free to disregard Agee's command." It is Secherest's burden to overcome Henderson's qualified immunity by showing that Henderson violated his clearly established constitutional right. "Although the plaintiff need not identify a case directly on point in order to show the law was clearly established, he or she must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." Bailey v. Ramos, 125 F.4th

13

667, 674 (5th Cir. 2025) (citation modified).  Secherest has failed in this regard.

In support of this argument that he was free to disregard Agee's commands, Secherest cites cases setting out the requirement of reasonable suspicion to justify a Terry stop. See Cooper v. State, 145 So. 3d 1164, 1168 (Miss. 2014) (stating that before conducting an investigatory stop, officers must have reasonable suspicion that a suspect "was involved in a felony . . . or is about to be engaged in criminal activity."); Rainer v. State, 944 So. 2d 115, 118 (Miss. Ct. App. 2006) (holding that absent reasonable suspicion, an individual has the right "to ignore the police and go about his business." (quoting Wardlow v. Illinois, 528 U.S. 119, 125 (2000))); id. (stating that "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."  (citing Florida v. Bostick, 501 U.S. 429, 437 (1991))).  But that is not what happened here.

This was not a Terry stop but the very different situation of a person approaching officers, wanting to know why his son was being arrested.  Secherest, in fact, states in his brief that "rather than being stopped, he approached officers to inquire about his son."  Secherest has offered no authority holding that a person in that circumstance is free to disregard an officer's reasonable command, due to an ostensible concern

14

for officer safety, that he remove his hands from his pockets (or take some other action, such as moving away from the scene).

Secherest argues further that there was no probable cause for his arrest in any event because (1) he did not intend to or actually breach the peace, and (2) he did not fail to "promptly" obey Agee's command.  The court previously wrote that Secherest failed to "immediately" comply with Agee's command.  The court could just as accurately have stated that he failed to act "promptly," which is not always but is in this circumstance synonymous with "immediately."  The video shows that rather than remove his hand from his pocket, Secherest questioned Agee's authority to issue such a command and that Secherest thus failed to act "promptly" to comply.

Secherest's further assertion that he did not intend to cause a breach of the peace or actually cause a breach of the peace is not determinative of probable cause.  Henderson claims qualified immunity, so the question is whether a reasonable officer in his position could have arguably concluded that probable cause existed.  In the court's opinion, the facts demonstrate the existence of arguable probable cause, and specifically, Secherest's failure to "promptly" remove his hand from his pocket after being directed to do so coupled with his taunting Agee to "Go ahead, do it.  Do it."  Therefore, the

15

court will grant Henderson's motion for summary judgment based on qualified immunity.

Henderson has also moved for summary judgment on Secherest's claim against him for excessive force. Plaintiffs have not responded to his arguments for dismissal of this claim, which the court will grant based on the evidence and arguments put forward by Henderson.

Comechia Randle

Municipal defendants seek summary judgment on Comechia Randle's excessive force claim, contending bodycam video shows that the force used to effect her arrest was reasonable and not excessive. They also argue that her excessive force claim is barred by Heck in any event, based on her conviction for resisting arrest. In his separate motion, Dobbins joins in the Municipal defendants' arguments as to why Randle's excessive force claim fails, and he adds that her claim against him fails because there are no allegations that he ever touched her.

In response, Randle maintains the bodycam video makes clear that she was tased after she was subdued and thus establishes both that she was subjected to excessive force and that her claim is not Heck-barred because her claim challenges on post-arrest force. In the court's opinion, Randle's claim is clearly barred by Heck.

16

Heck mandates the dismissal of Randle's claim if "success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." Sampy, 144 F.4th at 799 (quoting Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008). To avoid dismissal, she must show that the factual basis for [er conviction "temporally and conceptually distinct from the excessive force claim." Id. (quoting Bush, 513 F.3d at 498).

> "[A] claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." Id. But if the [resistance] and the alleged excessive force are closely interrelated, [Randle's] claim "necessarily would imply the invalidity of [her] arrest and conviction for [resisting arrest]. Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996). [Randle] must therefore "produce[] evidence that the alleged excessive force occurred after [she] stopped" [resisting]. Bush, 513 F.3d at 500. While the chronology of events is critical, whether a claim is temporally and conceptually distinct is not discerned with mathematical precision. If the conviction and alleged excessive force both stem from "a single violent encounter," [Randle's] claim is barred. DeLeon v. City of Corpus Christi, 488 F.3d 649, 656 (5th Cir. 2007).

Sampy, 144 F.4th at 799.

Randle's arrest cannot be seen on the bodycam video but it can be heard quite clearly. And from the audio, it is obvious that the tasing which she contends constitutes the excessive force is not temporally or conceptually distinct from the

17

resistance for which she was convicted.  Accordingly, her claim is barred by Heck.

Frederick Johnson

At issue on defendants' motion are three of six false arrest claims asserted in this case by Frederick Johnson. Regarding his false arrest claim relating to an arrest by defendant Walters that allegedly occurred on June 22, 2023 for petit larceny and trespass, defendants contend that, in fact, this arrest occurred on July 9, 2023; and they maintain that the claim relating to this arrest is barred by Heck.  As support, they have offered court records which purport to show that on September 28, 2023, Johnson appeared in open court, entered a plea of "not guilty" and was found guilty of petit larceny in Case No. 71979, and trespassing in Case No. 71980 and sentenced to five days in jail, with two days' time served, and a total of $1,000 fine plus assessments.  In response to the motion, Johnson agrees that the false arrest claim from that incident is likely barred by Heck.

Johnson has also alleged a false arrest claim based on a May 20, 2023 arrest, in which he claims that he was arrested by James Jackson (who is not a defendant) and charged with old fines, open container, possession of paraphernalia, and public drunkenness, even though the cup Johnson was carrying "did not

18

contain alcohol, and [he] had not been drinking."  Defendants contend Johnson's false arrest claim relating to this arrest is barred by Heck based on court records which show that a month later, on June 22, 2023, Johnson appeared in court and pled guilty to possession of paraphernalia and was fined $250, and pled not guilty to the open container charge but was found guilty and fined $300.

Johnson argues that the photograph of the municipal court docket book page offered by defendants does not tie his June 22 conviction to his May 20 arrest.  In this regard, the docket book does not indicate the date of the arrest to which the convictions relate but it does clearly show that it was based on an arrest by officer "J. Jackson" in which Johnson was charged with public drunk, open container and possession of paraphernalia in case numbers 71774, 71775 and 71776, respectively.  The court appearance and resulting convictions also occurred close in time to the date of the May 20 arrest. For his part, Johnson attests that "[t]o the best of [his] recollection, he was never convicted of any charges stemming from [the May 20] arrest."  While the evidence does tend to suggest that Johnson was convicted of the charges made in connection with his May 20, 2023 arrest, the evidence is not definitive; and in light of Johnson's denial (which the court acknowledges is made only to the best of his recollection), the

19

court finds that the better course at this time is to deny summary judgment.[10]

Regarding Johnson's further claim for false arrest relating to his June 9, 2023 arrest, it is clear based on evidence presented by defendants, and specifically, the statement of the Double Quick employee who reported that Johnson had stolen a cup of coffee, that there was probable cause for Johnson's arrest for petit larceny.  In the response, Johnson argues that the evidence does not provide sufficient information as to what was conveyed to the police so that the existence vel non of probable cause can be assessed; but as defendants point out, the statement identifies the individual who spoke with Walters, states that he described the suspect and that he identified Johnson as the individual who stole the cup of coffee.  This claim will be dismissed.

Tyqwon Walden

Dobbins seeks dismissal of Tyqwon Walden's claim against him for false arrest on a charge of burglary, arguing that the complaint fails to state a claim and that he is entitled to qualified immunity.  In response to the motion, Walden maintains that his allegations in the complaint "plausibly establish that Dobbins fabricated probable cause [for his arrest].  Mr. Walden

---

[10]    Defendants are free to seek summary judgment on this claim with more conclusive proof.

20

alleged that (1) Dobbins 'claimed' that someone had identified him by name, and (2) that the witness exposed Dobbins's falsehood by saying that 'Mr. Walden was not the person they had identified.'"  This, however, is not what Walden has alleged. Rather, all he has alleged is that Dobbins arrested him and took him to the police station; that Dobbins "claimed that someone had identified Walden as an individual who had broken into their house"; and that Dobbins let him go when the person told Dobbins that Walden was not the person they had identified.  There is no allegation that Dobbins fabricated a basis for the arrest, nor is there any arguable allegation, or facts to support a reasonable conclusion that Dobbins lacked probable cause for Walden's arrest.  It is clear, in the court's opinion, that the complaint fails to state a claim for false arrest upon which relief can be granted.  This claim will be dismissed.

Official Capacity Claims

In the court's opinion, plaintiffs have offered not valid reason why their official capacity claims against the individual defendants ought not be dismissed, and therefore, the motion for dismissal of these claims will be granted.

Equal Protection

All defendants seek dismissal of all plaintiffs' equal protection claims against them.  Under the Equal Protection clause, law enforcement cannot selectively enforce "the law

21

based on considerations such as race." Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [he] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Bowlby v. City of Aberdeen, 681 F.3d 215, 227 (5th Cir. 2012) (quoting Priester v. Lowndes Cty., 354 F.3d 414, 424 (5th Cir. 2004) (internal quotation marks omitted)).

Here, "[a]ll plaintiffs" have purported to state claims for relief against both the City and against all individual defendants "for discriminatory treatment due to racially biased policing under Defendants Dobbins' and Henderson's reign of terror." They allege:

> [T]he actions of Defendants, acting under color of law, in targeting, threatening, coercing, harassing, and assaulting Lexington's Black citizens violated their right to equal protection under the law pursuant to the Fourteenth Amendment of the United States Constitution.
>
> Black residents are singled out for arrests without probable cause and retaliation. LPD's disparate treatment of Black Lexington citizens has no legitimate basis and is motivated by invidious discriminatory animus.
>
> Defendants' disparate treatment of Plaintiffs because of their race violated Plaintiffs' basic human rights, constitutional protections, and the fundamental principles of equal protection.

22

Beyond these broad "shotgun" allegations, the court, having thoroughly reviewed plaintiffs' complaint, finds they have not made a single nonconclusory allegation of discriminatory intent against any individual, other than defendant Dobbins.[11] Plaintiffs' allegations do not state a claim against any individual defendant for violation of their equal protection rights.  See Griffin v. HSBC Mortg. Servs., Inc., No. 4:14-CV-00132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) ("'Quintessential' shotgun pleadings also fail to distinguish between the actions of named defendants.  What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." (cleaned up)).

Regarding defendant Dobbins, while plaintiffs' allegations of discriminatory intent are nonconclusory, any putative equal protection claim against him fails as plaintiffs have not identified any similarly-situated comparators.  See Villarreal

---

[11]    While the complaint purports to detail Henderson's past abusive behavior, including "a long history of harassment, false arrests, and sexual violence against women as an officer in Goodman, Canton, and Lexington," there is no allegaiton that his alleged actions were motivated by race, in constrast to Dobbins, who is specifically alleged to have harbored racially discriminatory animus.

v. City of Laredo, Texas, 94 F.4th 374, 398 (5th Cir.), cert. granted, judgment vacated sub nom. Villarreal v. Alaniz, 145 S. Ct. 368, 220 L. Ed. 2d 137 (2024) (affirming 12(b)(6) dismissal of plaintiff's claims under Fourth and First Amendments as well as her equal protection claim, stating "Villarreal's Fourteenth Amendment selective enforcement claim likewise required her to identify 'examples' of similarly situated individuals who were nonetheless treated differently. . . Villarreal did not provide even one example of an individual similarly situated to her in all relevant respects who was not arrested for his conduct."); Villarreal v. City of Laredo, Texas, 134 F.4th 273, 275, 276 (5th Cir. 2025), cert. denied sub nom. Villarreal v. Alaniz, No. 25-29, 2026 WL 795532 (Mar. 23, 2026) (concluding that remand from Supreme Court following vacatur of 2024 en banc opinion was directed only to ruling on First amendment claim, stating that "[o]ur previous en banc majority opinion is superseded only to this extent, and on this revised basis, the judgment dismissing Villarreal's First Amendment retaliation claim is AFFIRMED).

Title VI Claim Against the City

Plaintiffs' Title VI claim against the City will be dismissed.  Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity

24

receiving federal financial assistance." 42 U.S.C. § 2000d. Title VI was enacted pursuant to Congress' spending power and conditions an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the government and the recipient of funds. Parker v. Franklin Cnty. Cmty. School Corp., 667 F.3d 910, 917 (7th Cir. 2012). "To state a cause of action under Title VI, a plaintiff must allege that he is the 'intended beneficiary of, an applicant for, or a participant in a federally funded program.'" Azteca Enters., Inc. v. Dallas Area Rapid Transit, No. 01-10213, 2002 WL 261521, at *2 (5th Cir. Feb. 6, 2002) (quoting Jackson v. Katy Indep. School Dist., 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)).

As the basis for their putative claim under Title VI, plaintiffs allege the following: "The City of Lexington receives federal funding in the form of federal grants and incentives. [Lexington Police Department] used excessive force against Plaintiffs by targeting Plaintiffs with false arrest, retaliation, excessive force, and illegal searches and seizures, [and] Defendants have engaged in racial discrimination and harassment prohibited by 42 U.S.C. §2000d."

Title VI defines "program or activity," in relevant part, as:

all of the operations of—

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

42 U.S.C. § 2000d-4a.  The City of Lexington, which is alleged to have received the federal funding supporting plaintiffs' Title VI claim, does not fit within this definition of "program or activity.  The City is a municipality, i.e., a "local government."  It is not the "operation" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government," or of "the entity of such State or local government that distributes such assistance," or of any of the other entities set out in § 2000d-4a.  See Knowlton v. City of Wauwatosa, Case No. 20-CV-1660, 2023 WL 2480353, at *7-8 (E.D. Wis. Mar. 13, 2023) (explaining that "under the plain language of the statute, a city cannot be a 'a department, agency, special purpose district, or other instrumentality' of itself, nor can it be an 'entity' of itself," so that a city "does not fall under the scope of Title VI.") (collecting cases so holding)).  It follows that the Title VI claim will be dismissed.

26

City of Lexington – Monell Liability

Defendants declare that "[i]f each of the claims are dismissed for lack of a constitutional violation, plaintiffs' Monell claims against the City necessarily fail as well."  That is correct.  Thus, plaintiffs cannot succeed against the City on any claim for false arrest, excessive force or First Amendment retaliation that the court has dismissed on the basis that plaintiffs have failed to allege or come forward with proof to establish an underlying constitutional violation.  Plaintiffs also cannot succeed against the City on any claim that the court has found to be barred by Heck.

Injunctive Relief

Defendants have moved for dismissal of plaintiffs' claims for injunctive relief on several bases.  In the court's opinion, defendants' arguments are well taken to the extent they contend that (1) injunctive relief is not available to any plaintiff whose claims have been dismissed in their entirety, and (2) plaintiffs are not themselves entitled to obtain injunctive relief based on the wrongs against non-parties (even though it may be true that injunctive relief in favor of plaintiffs could have the practical effect of benefitting non-parties).  Beyond that, the court is not inclined to dismiss the remaining plaintiffs' claims for injunctive relief at this time.

27

Defendants argue that the remaining plaintiffs lack standing to seek injunctive relief.  Defendants do not appear to deny that at the commencement of the case, plaintiffs had standing.  Rather, they contend that circumstances have changed since the case was filed to such an extent that plaintiffs' claims for injunctive relief have become moot.  Specifically, they point out that in January 2026, in the wake of a final report by the United States Justice Department (DOJ) finding multiple civil rights violations by the Lexington Police Department and the City of Lexington, as alleged by plaintiffs herein, the Board of Aldermen for the City voted to adopt certain recommendations made by the DOJ in its report.  Further, the Board voted to terminate Charles Henderson, who, along with former chief of police Sam Dobbins, was alleged to have been responsible for the practices, customs and policies that were the moving force behind the constitutional deprivations suffered by plaintiffs.

As one court has succinctly explained,

> "It is well settled that, in a suit for injunctive relief, the voluntary cessation of the allegedly illegal conduct does not moot the controversy arising from the challenged activity."  The reasoning underlying this rule is manifest: a contrary rule would allow a defendant to refrain temporarily from the challenged conduct, thus defeating suit, and then resume its "old ways" once the plaintiff's lawsuit is a thing of the past.  This rule is not absolute; even if a defendant voluntarily ceases the conduct, "[a] case might become moot if subsequent events made it

28

absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." Here, the defendants, as the parties asserting mootness, bear the "heavy" and "formidable" burden of making this showing. A defendant's "bare assurance" that it will not engage in the conduct again is insufficient to meet its burden.

Advocacy Center for Elderly and Disabled v. Louisiana Dept. of Health and Hospitals, 731 F. Supp. 2d 583, 597–98 (E.D. La. 2010) (citations omitted).

Here, while it does seem unlikely that the allegedly illegal conduct will recur, the court is hesitant to find at this time that defendants have sustained their burden to show it is "absolutely certain" that it won't. In this regard, the court accepts that, since "we presume that state actors, as public representatives, act in good faith," Freedom From Religion Found., Inc. v. Abbott, 58 F.4th 824, 833 (5th Cir. 2023), then, absent evidence to the contrary, it must assume that "formally announced changes to official government policy are not mere litigation posturing," U.S. Navy SEALs 1-26 v. Biden, 72 F.4th 666, 674 (5th Cir. 2023). However, as plaintiffs point out in their surreply, while the Board of Aldermen has voted to implement recommendations of the DOJ, they have not formally implemented any changes at this point.[12]

---

[12]  Plaintiffs also point out that the DOJ's recommendations are not coterminous with the injunctive relief they have requested in their complaint.

29

Accordingly, the court will deny (without prejudice) the motion for injunctive relief at this time.

Sanctions

Defendants have requested sanctions against plaintiffs Leon Lewis, Arkica Stewart, Minnie Stewart, Quarneeshia Walden and Leroy Secherest for having submitted statements and affidavits to the court that have been shown by video evidence to be false. In part because these individuals' statements may have been the product of mistaken recollection rather than an intent to deceive, the court, in its discretion, declines to impose sanctions.

Conclusion

Based on the foregoing, it is ordered that the motions of Municipal defendants and Dobbins for summary judgment (or to dismiss) are granted in part and denied in part, as set forth herein.

SO ORDERED this 30th day of March, 2026.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

30